LEON GREENBERG, ESQ., SBN 8094
DANA SNIEGOCKI, ESQ., SBN 11715
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
dana@overtimelaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL RENO, Individually and on behalf of others similarly situated, | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT |
| WESTERN CAB COMPANY, HELEN TOBMAN MARTIN, MARILYN TOBMAN MORAN, JANIE TOBMAN MOORE, MARTHA SARVER and "John Does" name fictitious, actual name and number unknown, et al., | |
| Defendants. | |

MICHAEL RENO, individually and on behalf of others similarly situated, by and through their attorneys, Leon Greenberg Professional Corporation, as and for a Complaint against the defendants, states and alleges, as follows:

**JURISDICTION, PARTIES AND PRELIMINARY STATEMENT**

1.  This Court has jurisdiction over the claims alleged herein because Plaintiff seeks relief pursuant to the Fair Labor Standards Act ("FLSA") for the Defendants' failure to pay minimum wages as required by 29 U.S.C. § 201-218 et. seq. The employment relationship alleged to exist between the parties is subject to the FLSA because the defendants are properly deemed "employers" within the meaning of the FLSA as they have in excess of $500,000 in yearly revenue and the employment

alleged involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

2. The Court has supplemental jurisdiction over the State Law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

3. The plaintiff, MICHAEL RENO, (the "individual plaintiff" or the "named plaintiff") is a resident of Clark County in the State of Nevada and is a former employee of the defendants.

4. The defendant, WESTERN CAB COMPANY, (hereinafter referred to as "Western Cab" or one of the "defendants") is a corporation existing and established pursuant to the laws of the State of Nevada with its principal place of business in the County of Clark, State of Nevada and conducts business in Nevada.

5. Each of the defendants, HELEN TOBMAN MARTIN, MARILYN TOBMAN MORAN, JANIE TOBMAN MOORE and MARTHA SARVER (the "individual defendants") are, for the purposes of the claims made herein under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), an employer of the named plaintiff and the members of the putative plaintiff class as each has acted on behalf of an employer and/or acted as an employer by willfully, intentionally, knowingly or otherwise promoting, allowing, directing or otherwise creating the compensation policies alleged herein that violate the FLSA, each such individual defendant also exercising the power they had with the other defendant, Western Cab, by virtue of their status as an officer and/or manager and/or owner and/or director of the same to continue, create, or allow such policies to flourish and remain in existence. In addition, defendants HELEN TOBMAN MARTIN and MARTHA SARVER, after close examination by the United States Department of Labor, were deemed by that agency to be employers for the purposes of the FLSA and on that basis are so alleged in this action to be FLSA employers.

6. The defendants "John Does" are natural persons the number of such persons, and their identities, being currently unknown to the plaintiff but known to the

2

defendants. Such persons are alleged to be liable to the plaintiff and those similarly situated under the FLSA on the same basis as the individual defendants, in that such persons have acted on behalf of an employer or as an employer in respect to the FLSA violations alleged herein. Upon appropriate discovery being undertaken plaintiff proposes to identify and properly name all such persons as defendants in this case in respect to the FLSA claims made herein.

## CLASS ACTION AND COLLECTIVE ACTION ALLEGATIONS

7. This is a class and collective action brought on behalf of all persons who worked for the defendants within the last three years as taxi drivers in respect to the FLSA claims made herein and within such other applicable statute of limitations that governs the claims made under Nevada Law.

8. The class and collective action may include one or more sub-classes consisting of the drivers directly employed by Western Cab, if the Court finds that more manageable.

9. Upon information and belief, there are no collective bargaining agreements applicable to the plaintiff and/or members of the proposed plaintiff class which waive the provisions of Article 15, Section 16 of the Constitution of the State of Nevada or any other protections afforded to employees by Nevada law.

10. The plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. §23 on behalf of themselves and a class of all similarly situated persons employed by the defendant Western Cab in the State of Nevada.

11. The class of similarly situated persons for Fed. R. Civ. P. 23 purposes consists of all persons employed by defendant Western Cab from December 13, 2012, or commencing on such other date that is found applicable, and continuing until date of judgment, such persons also being employed as taxi drivers by Western Cab such employment involving the driving of taxi cabs for such defendant in the State of Nevada.

12. A common circumstance of the taxi drivers giving rise to the Nevada state

law class action allegations and the Fair Labor Standards Act collective action allegations is that while they were employed by defendants those taxi drivers were not paid the minimum wage required by Nevada's Constitution, Article 15, Section 16 for many or most of their work weeks that they worked in that their hourly compensation, when calculated pursuant to the requirements of said Nevada Constitutional provision and the FLSA did not equal at least the minimum hourly wage required by those laws. An additional common circumstance is that for those taxi drivers employed by defendants after March 23, 2018, they have been required to have their tips subjected to an improper use by the defendants in violation of the FLSA.

13.     Pursuant to Section 16(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the individual plaintiff brings this Complaint as a collective action (also commonly referred to as an "opt-in" class), on behalf of themselves and all persons similarly situated, to wit a putative class of taxi drivers employed by the defendants during the three years prior to the filing of this Complaint until entry of judgment after trial, such taxi drivers not being paid, on occasion, minimum wage in accordance with the FLSA.  This action is also brought on behalf of those taxi drivers employed by defendants after March 23, 2018 who have been required to have their tips subjected to an improper use by the defendants in violation of the FLSA.  Such weeks of work where defendants failed to pay such minimum wages are known to defendants who possess the representative plaintiff's working time and compensation records and often arose during slow periods of business for the Las Vegas taxi industry, the representative plaintiff having experienced at least one such failure to pay minimum wages during one or more weeks in the month of December during the three years preceding the filing of this Complaint.

14.     The failure of the defendants to pay minimum wages to the individual plaintiff and the putative class and collective action members arises from defendants' policy of forcing the individual plaintiff and those similarly situated to pay for the gasoline needed to fuel Western Cab's taxicabs.  Those payments for fuel made by the

individual plaintiff and those similarly situated were not reimbursed, at all, by the defendants, or only partially reimbursed by the defendants, and after the cost of making those payments is considered the individual plaintiff and those similarly situated were earning less than $7.25 an hour in wages during some weeks of their employment for defendants.

15. Defendant Western Cab has admitted, via a sworn declaration of its attorney, John T. Moran Jr., that its policy since at least February of 2012 is to require that all of its taxi drivers pay for the fuel costs of Western Cab's taxi cabs from their tips. *See,* Ex. "A" ¶ 9.

16. The named plaintiff is informed and believes, and based thereon alleges that there are at least 100 putative class action members. The actual number of class members is readily ascertainable by a review of the defendants' records through appropriate discovery.

17. There is a well-defined community of interest in the questions of law and fact affecting the class as a whole.

18. Proof of a common or single set of facts will establish the right of each member of the class to recover. These common questions of law and fact predominate over questions that affect only individual class members. The individual plaintiff's claims are typical of those of the class.

19. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Due to the typicality of the class members' claims, the interests of judicial economy will be best served by adjudication of this lawsuit as a class action. This type of case is uniquely well-suited for class treatment since the employer's practices were uniform and the burden is on the employer to establish that its method for compensating the class members complies with the requirements of Nevada law and the FLSA.

20. The individual plaintiff will fairly and adequately represent the interests of the class and has no interests that conflict with or are antagonistic to the interests of the

class and has retained to represent them competent counsel experienced in the prosecution of class action cases and will thus be able to appropriately prosecute this case on behalf of the class.

21. The individual plaintiff and his counsel are aware of their fiduciary responsibilities to the members of the proposed class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for all members of the proposed class.

22. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. In addition, the class members' individual claims are small in amount and they have no substantial ability to vindicate their rights, and secure the assistance of competent counsel to do so, except by the prosecution of a class action case.

**AS AND FOR A FIRST CLAIM FOR RELIEF ON BEHALF OF THE NAMED PLAINTIFF AND ALL PERSONS SIMILARLY SITUATED PURSUANT TO NEVADA'S CONSTITUTION AGAINST DEFENDANT WESTERN CAB**

23. The named plaintiff repeats all of the allegations previously made and brings this First Claim for Relief pursuant to Article 15, Section 16, of the Nevada Constitution against defendant Western Cab only.

24. Pursuant to Article 15, Section 16, of the Nevada Constitution the named plaintiff and the class members were entitled to an hourly minimum wage for every hour that they worked for defendant Western Cab and the named plaintiff and the class members were often not paid such required minimum wages, in that for some of the weeks they worked, the plaintiff's and the class members' wages did not equal either the $7.25 per hour or $8.25 per hour required by the Nevada Constitution.

25. Western Cab's violation of Article 15, Section 16, of the Nevada Constitution involved malicious and/or dishonest and/or oppressive conduct by the

defendant sufficient to warrant an award of punitive damages for the following, amongst other reasons:

    (a) Defendant despite having, and being aware of, an express obligation under Article 15, Section 16, of the Nevada Constitution, such obligation commencing no later than July 1, 2007, to advise the plaintiff and the class members, in writing, of their entitlement to the minimum hourly wage specified in such constitutional provision, failed to provide such written advisement;

    (b) Defendant was aware that the highest law enforcement officer of the State of Nevada, the Nevada Attorney General, had issued a public opinion in 2005 that Article 15, Section 16, of the Nevada Constitution, upon its effective date, would require defendant and other employers of taxi cab drivers to compensate such employees with the minimum hourly wage specified in such constitutional provision.  Defendant consciously elected to ignore that opinion and not pay the minimum wage required by Article 15, Section 16, of the Nevada Constitution to its taxi driver employees in the hope that it would be successful, if legal action was brought against it, in avoiding paying some or all of such minimum wages;

    (c) Defendant, to the extent it believed it had a colorable basis to legitimately contest the applicability of Article 15, Section 16, of the Nevada Constitution to its taxi driver employees, made no effort to seek any judicial declaration of its obligation, or lack of obligation, under such constitutional provision and to pay into an escrow fund any amounts it disputed were so owed under that constitutional provision until such a final judicial determination was made;

        (d) Defendant maliciously created its policy of forcing payment of the fuel costs of its taxicabs on its taxi drivers in a cash and "off the books" fashion whereby those expenses did not appear on its payroll or other records documenting the actual wages earned by its taxi drivers. It implemented that policy to create a false appearance to anyone examining its records, such as the United States Department of Labor, that it was in compliance with the minimum wage standards applicable to its taxi drivers when, in fact, it was violating those standards. Such violation of those minimum wages standards arose because after considering the cost to the taxi drivers of paying those fuel expenses such drivers were actually earning less than the applicable minimum wage. Western Cab was aware it was violating Nevada's Law by engaging in that practice and failing to pay minimum wages but continued to do so anyway.

26.  Western Cab engaged in the acts and/or omissions detailed in paragraph 25 in an intentional scheme to maliciously, oppressively and dishonestly deprive its taxi driver employees of the hourly minimum wages that were guaranteed to those employees by Article 15, Section 16, of the Nevada Constitution. It so acted in the hope that by the passage of time whatever rights such taxi driver employees had to such minimum hourly wages owed to them by Western Cab would expire, in whole or in part, by operation of law. Western Cab so acted consciously, willfully, and intentionally to deprive such taxi driver employees of any knowledge that they might be entitled to such minimum hourly wages, despite Western Cab's obligation under Article 15, Section 16, of the Nevada Constitution to advise such taxi driver employees of their right to those minimum hourly wages. Western Cab's malicious, oppressive and dishonest conduct is also demonstrated by its failure to make any allowance to pay such minimum hourly wages if they were found to be due, such as through an escrow account, while seeking any judicial determination of their obligation to make those

payments.

27. The named plaintiff seeks all relief available to him and the alleged class under Nevada's Constitution, Article 15, Section 16 including appropriate injunctive and equitable relief to make Western Cab cease its violations of Nevada's Constitution and a suitable award of punitive damages.

28. The named plaintiff on behalf of themselves and the proposed plaintiff class members, seek, on this First Claim for Relief, a judgment against Western Cab for minimum wages owed since December 14, 2012 and continuing into the future, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, the plaintiff and the class members along with suitable injunction and other equitable relief barring Western Cab from continuing to violate Nevada's Constitution, a suitable award of punitive damages, and an award of attorneys' fees, interest and costs, as provided for by Nevada's Constitution and other applicable laws.

**AS AND FOR A SECOND CLAIM FOR RELIEF PURSUANT TO THE FAIR LABOR STANDARDS ACT AGAINST ALL DEFENDANTS**

29. The named plaintiff repeats all of the allegations previously made and brings this Second Claim for Relief pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all persons who have filed, or will file, their written consents with the Court to join this lawsuit and against all defendants including the individual defendants.

30. Pursuant to the applicable provision of the FLSA, 29 U.S.C. § 206, the named plaintiff and the members of the proposed plaintiff class were entitled to a minimum hourly wage. The plaintiff and the members of the proposed plaintiff class did not, during every work week, receive the minimum wage of at least $7.25 an hour required by Section 206 of the FLSA.

31. While employers under the FLSA can avail themselves of a "tip credit" against its minimum wage, allowing them under certain circumstances to pay a minimum hourly wage of less than $7.25 an hour, defendants could not claim that tip

9

credit in respect to the plaintiff and those similarly situated.  Defendants could not claim such a "tip credit" because, as discussed *supra*, they failed to comply with 29 U.S.C. § 203(m) which requires that the tips plaintiff and those similarly situated receive be completely retained by such employees and *not* be taken or used by their employer for any purpose.  They failed to comply with such requirement of the FLSA by requiring, as demonstrated in Ex. "A" ¶ 9, that plaintiff and those similarly situated use their tips to pay for the fuel costs incurred by Western Cab in operating its taxi cabs.  Such requirement rendered defendants ineligible to claim any tip credit under 29 U.S.C. § 203(m) and required that they pay the plaintiff and those similarly situated the full FLSA minimum wage of at least $7.25 an hour for every hour worked during every work week.

32.    Commencing March 23, 2018 the provisions of 29 U.S.C. § 203(m) were amended to prohibit employers from using or taking any tips earned by their employees for any purpose, even if the employee was earning a wage in excess of $7.25 an hour.  Accordingly, in respect to those persons similarly situated to the named plaintiff Michael Reno who worked on or after March 23, 2018, such persons are entitled to collect from defendants the full amount of the fuel costs defendants forced such persons to pay for Western Cab's taxi cabs, and equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).  That is because such forced payment of fuel costs violated 29 U.S.C. § 203(m) as revised on March 23, 2018 as those costs were paid from the tips of those persons, as documented in Ex. "A" ¶ 9, and constituted an improper use or retention of employee tips by defendants in violation of the FLSA.

33.    Defendants' violations of the FLSA were willful and intentional.  Those willful and intentional violations of the FLSA are demonstrated, by among other things, the defendants' implementation of their policy in February of 2012 requiring their taxi drivers to pay the fuel costs of Western Cab's taxi cabs from their tips, Ex. "A" ¶ 9.  By implementing such policy they failed to both comply with the tip credit provisions of 29 U.S.C. § 203(m) and pay the full $7.25 an hour minimum wage

required by the FLSA, and effectuated such policy in response to action by the United States Department of Labor (the "USDOL"). Specifically, they instituted that policy in response to a prior audit and FLSA enforcement effort by the USDOL which resulted in a payment by Western Cab in January of 2012 of over $280,000 in unpaid FLSA minimum wages to Western Cab taxi drivers as overseen by the USDOL. The February 2012 policy of forcing taxi drivers to pay for the fuel costs of Western Cab's taxi cabs was intended to deceive the USDOL, and all other persons or government agencies, into believing Western Cab was paying the minimum wage to its taxi driver employees required by the FLSA. That belief was created by the fact that in examining the payroll records of Western Cab, and the records of the hours of work of the Western Cab taxi drivers, from February of 2012 and later, it appears that such cab drivers were receiving at least the minimum hourly wage required by the FLSA. But in fact, as Western Cab was aware of, or would have been aware of if it had made reasonable efforts to understand the law, such records communicated a knowingly false depiction of such FLSA compliance as (A) The amounts so paid by the taxi drivers for fuel for Western Cab's taxi cabs, which was not recorded on those payroll records, must be deducted from the gross wages that Western Cab paid those taxi drivers in determining if the FLSA minimum hourly wage has been paid, and after such deduction was performed during certain work weeks the wages paid to such taxi drivers were less than the minimum hourly wage required by the FLSA; and (B) Forcing the taxi drivers to use their tips to pay for the fuel used by Western Cab's taxi cabs disallowed Western Cab's claim that it was entitled to a tip credit under 29 U.S.C. § 203(m) and as a result it had to pay the full $7.25 an hour minimum wage required by the FLSA, but such payroll records did not indicate that Western Cab could not claim such a tip credit and only demonstrated FLSA minimum hourly wage compliance if such a tip credit was available to Western Cab, which it was not.

  34. The plaintiff, on behalf of themselves and all other similarly situated persons who consent in writing to join this action, seeks, on this First Claim for Relief,

1  a judgment for unpaid minimum wages, and additional liquidated damages of 100% of
2  any unpaid minimum wages, and for such persons similarly situated employed on or
3  after March 23, 2018 the amount of fuel costs such persons were forced to pay since
4  those costs constituted an improper taking of those persons' tips by the defendants in
5  violation of the FLSA, along with an equal amount of liquidated damages, such sums
6  to be determined based upon an accounting of the hours worked by the plaintiff and
7  any such other persons who consent to join this action, and the wages they were paid
8  and the fuel costs they were forced to pay, and the plaintiff also seeks an award of
9  attorneys' fees, interest and costs as provided for by the FLSA.

**AS AND FOR A THIRD CLAIM FOR RELIEF PURSUANT TO NEVADA REVISED STATUTES § 608.040 ON BEHALF OF THE NAMED PLAINTIFF AND THE PUTATIVE CLASS AGAINST DEFENDANT BELL TRANS**

12     35.   Plaintiff repeats and reiterates each and every allegation previously made
13  herein.

14     36.   The named plaintiff brings this Third Claim for Relief against the defendant
15  Western Cab pursuant to Nevada Revised Statutes § 608.040 on behalf of themselves
16  and the alleged class of all similarly situated employees of the defendant Western Cab.

17     37.   The named plaintiff has been separated from their employment with
18  Western Cab prior to the filing of the instant action, and at the time of such separation
19  was owed unpaid wages by the defendant Western Cab, including the unpaid minimum
20  wages alleged herein.

21     38.   Western Cab has failed and refused to pay the named plaintiff and numerous
22  members of the putative plaintiff class who are the former employees of Western Cab
23  their earned but unpaid wages, such conduct by Western Cab constituting a violation
24  of Nevada Revised Statutes § 608.020, or § 608.030 and giving such named plaintiff
25  and similarly situated members of the putative class of plaintiffs a claim against
26  Western Cab for a continuation after the termination of their employment with
27  Western Cab of the normal daily wages Western Cab would pay them, until such
28  earned but unpaid wages are actually paid or for 30 days, whichever is less, pursuant to

1 | Nevada Revised Statutes § 608.040.

2 |     39.  As a result of the foregoing, the named plaintiff seeks on behalf of themselves and the similarly situated putative plaintiff class members a judgment against the defendant Western Cab for the wages owed to them and such class members as prescribed by Nevada Revised Statutes § 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorneys' fees.

    WHEREFORE, plaintiff demands the relief on each cause of action as alleged aforesaid.   Plaintiff demands a trial by jury on all issues so triable.

Dated this 9th day of May, 2018

                            Leon Greenberg Professional Corporation

                                  By: /s/ *Leon Greenberg*

                              LEON GREENBERG, Esq.
                              Nevada Bar No.: 8094
                              2965 South Jones Blvd- Suite E3
                              Las Vegas, Nevada 89146
                              Tel (702) 383-6085
                              Fax (702) 385-1827

                              Attorney for Plaintiff

CONSENT TO JOINDER

MICHAEL RENO, by signing below, hereby consents to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

_____
MICHAEL RENO

# EXHIBIT "A"

## DECLARATION OF JOHN T. MORAN, JR.

Under penalties of perjury, John T. Moran, Jr. states as follows:

1. I am and for many years have been General Counsel for Western Cab Company ("Western Cab").

2. On March 26, 2012, Western Cab recognized the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (AFL-CIO/CLC) ("the Union") as the exclusive bargaining representative of Western Cab's taxi cab drivers. Western Cab maintains documents and information regarding its bargaining with the Union in the course of its regularly conducted business activity.

3. Western Cab was initially represented by Norman Kirshman in its negotiations with the Union. Attached hereto as Exhibit 3-A are Norman Kirshman's notes regarding the September 19, 2012 negotiations with the Union. These notes reflect that the Union was aware that the driver paid 100% of the gas.

4. Attached hereto as Exhibit 3-B is a memorandum of September 25, 2013 which Martha Sarver, the General Manager of Western Cab, distributed to all of Western Cab's then drivers to update them on the status of our negotiations with the Union.

5. In August 2013, Western Cab retained Greg Smith to represent it in negotiations with the Union. Attached hereto as Exhibit 3-C is a March 6, 2014 e-mail from Greg Smith to the Union informing the Union that the drivers keep their own gas receipts.

6. Attached hereto as Exhibit 3-D is an e-mail from Greg Smith to the Union dated May 22, 2014.

7. On June 10, 2015, I attended a bargaining session with Greg Smith and the Union. On that date, Greg presented the Union with Western Cab's latest contract proposal.

8.  Attached as Exhibit 3-E is the cover page of Western Cab's contract proposal on June 10, 2015 and the excerpt on Article 18 Wages. As part of Western Cab's proposal on wages, Western Cab proposed in accordance with its practice since February 2012 that, "Every driver must, at the end of his shift, return his cab with verified full tank of gas and in good operational order."

9.  My understanding is that Western Cab cannot make a unilateral change regarding wages without first bargaining with the Union. Western Cab has not changed its requirement that its drivers pay for their own gasoline out of their tips since this practice was first initiated in February 2012. Since June 10, 2015, the Union has not requested any further in person negotiations for a collective bargaining agreement.

10. When Greg Smith retired from the practice of law, Malani Kotchka became Western Cab's bargaining representative.

11. The National Labor Relations Board has never found that Western Cab violated the National Labor Relations Act regarding its requirement that their drivers return their cabs with a full tank of gas.

12. On June 7, 2017, on behalf of Western Cab, Malani Kotchka notified the Union that "Western Cab will contact or try to contact these drivers to inform them that it will pay them the back minimum wage which it has computed. Western Cab will make reasonable efforts to obtain acknowledgements of the payments to the drivers and will give them an opportunity to review records if the individual questions the amount calculated by Western Cab."

I declare under penalty of perjury of the law of the State of Nevada that the foregoing is true and correct.

Dated _____, 20__

_____
John T. Moran, Jr.