LEON GREENBERG, ESQ., SBN 8094
DANA SNIEGOCKI, ESQ., SBN 11715
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
dana@overtimelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MICHAEL RENO and ERIC
KIEFABER, Individually and on behalf
of others similarly situated,

          Plaintiff,

vs.

WESTERN CAB COMPANY, HELEN
TOBMAN MARTIN, MARILYN
TOBMAN MORAN, JANIE TOBMAN
MOORE, MARTHA SARVER, JASON
AWAD and "John Does" name
fictitious, actual name and number
unknown, et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:18-CV-840-APG-NJK

**PLAINTIFFS' MOTION FOR
LEAVE TO FILE A SECOND
AMENDED COMPLAINT**

      Plaintiffs, MICHAEL RENO and ERIC KIEFABER, by and through their

attorneys, Leon Greenberg Professional Corporation, hereby move this Court for

Leave to File a Second Amended Complaint in the form annexed to this Motion at Ex.

"A." This motion is made based upon the memorandum of points and authorities

submitted with this motion, the attached exhibits, and the other papers and pleadings

in this action.

///

///

**ARGUMENT**

**I.    THIS MOTION IS TIMELY, LEAVE TO AMEND SHOULD BE FREELY GRANTED, AND THE REQUESTED LEAVE IS APPROPRIATE UNDER THE CIRCUMSTANCES**

FRCP Rule 15(a)(2) provides that leave to amend should be "freely" granted.  In this case, the current Scheduling Order permits the parties to amend their pleadings until April 12, 2019.  ECF NO. 49.  The discovery period opened less than two months ago, and is not set to expire until July 11, 2019.  *Id*.  Accordingly, this motion is timely and should be granted.

The purpose of the Ex. "A" second proposed amended complaint is:

(1) To add as named plaintiffs, the following persons who have previously filed a consent to join this action under the FLSA: Dennis Rhoades, Jason Harris, Premier Tamayo, Wilfredo Allanigue, and Aries Bihasa; and

(2) To add as a named plaintiffs Marco Bakhtiari, a former taxicab driver employed by the defendants whose employment with the defendants ended more than three years ago, but who wishes to assert a claim against defendants under the Minimum Wage Amendment to the Nevada Constitution, Article 15 Section 16 (the "MWA").

**II.   THE AMENDMENTS SOUGHT ARE NECESSARY FOR THE PROPER JOINDER OF THE PROPOSED PLAINTIFFS UNDER RULE 23**

The foregoing requested amendments to the plaintiffs' complaint are made because of the unusual circumstances of in this litigation.  Prior to the filing of this case, there was another putative state law Rule 23 class action case, *Perera v. Western Cab Company*, commenced against the same defendant (Western Cab) for the same putative MWA class claims and related state law penalty claims.  That case was filed on September 23, 2014.  Ex. "A" state court complaint.  That case ("*Perera*") did *not* secure class certification, Perera's motion for class action certification being denied on February 16, 2018.  Ex. "B," Order denying class certification.  Under the traditional *American Pipe* tolling doctrine, the statute of limitations for all putative class members

is tolled upon the filing of a complaint asserting claims under Rule 23.  That tolling doctrine has recently been further defined, and limited, by the United States Supreme Court, in its decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (June 11, 2018).  *Resh* bars this Court from extending, to any Rule 23 class it certifies in this case, a class wide statute of limitations toll based upon the commencement of *Perera* in 2014.  *Resh* also re-affirms that an *American Pipe* statute of limitations toll *is* enjoyed by every putative class member of the *Perera* case *if* that person files an *individual MWA lawsuit.*

Based upon the foregoing, the proposed plaintiffs, Dennis Rhodes, Jason Harris, Premier Tamayo, Wilfredo Allanigue, Aries Bihasa, and Marco Bakhtiari are seeking to be added as named plaintiffs in this action and to secure, in compliance with *Resh*, their rights to individually assert claims under the MWA, thereby tolling the statute of limitations applicable to each of them.  The addition of Mr. Bakhtiari presents an issue for the Court which is distinct from the joinder of the other proposed plaintiffs because it is believed that Mr. Bakhtiari does not possess a claim within the FLSA's statute of limitaitons while all of the other proposed plaintiffs do.  The Ex. "C" declaration of Mr. Bakhtiari expounds on his desire to participate in this action despite not possessing an FLSA claim.  It is submitted the Court should exercise supplemental jurisdiction over Mr. Bakhtiari's MWA claim and permit his joinder as a party plaintiff.

///

///

///

///

///

///

///

///

1

CONCLUSION

2        Wherefore, plaintiffs' motion for leave to file a second amended complaint

3   should be granted in its entirety.

4

5   Dated: November 27, 2018

6                              Submitted by the attorneys for the Plaintiffs,
                               Leon Greenberg, Professional Corporation

7
                               By:  /s/ *Leon Greenberg*
8                              Leon Greenberg, Esq.
                               State Bar No. 8094
9                              2965 S. Jones Boulevard Suite E-4
                               Las Vegas, Nevada 89146
10                             (702) 383-6085
                               Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I hereby certify that the above and foregoing was electronically filed using the Court's CM/ECF system on this 20th day of November, 2018, which will send electronic notification of this filing to all counsel of record.


                                             _/s/ *Dana Sniegocki*_
                                            Dana Sniegocki

# EXHIBIT "A"

1  LEON GREENBERG, ESQ., SBN 8094
   DANA SNIEGOCKI, ESQ., SBN 11715
2  Leon Greenberg Professional Corporation
   2965 South Jones Blvd- Suite E3
3  Las Vegas, Nevada 89146
   Tel (702) 383-6085
4  Fax (702) 385-1827
   leongreenberg@overtimelaw.com
5  dana@overtimelaw.com

6  Attorneys for Plaintiffs

7  **UNITED STATES DISTRICT COURT**

8  **DISTRICT OF NEVADA**

9  MICHAEL RENO, ERIC KIEFABER,        )   Case No.: 18-CV-840-APG-NJK
10 DENNIS RHOADES, JASON HARRIS,       )
   PREMIER TAMAYO, WILFREDO            )
11 ALLANIGUE, ARIES BIHASA, AND        )   **[PROPOSED] SECOND**
   MARCO BAKHTIARI, individually and   )   **AMENDED COMPLAINT**
12 on behalf of others similarly situated, )
                                        )
13          Plaintiff,                  )
                                        )
14 vs.                                  )
                                        )
15 WESTERN CAB COMPANY, HELEN          )
   TOBMAN MARTIN, MARILYN              )
16 TOBMAN MORAN, JANIE TOBMAN          )
   MOORE, MARTHA SARVER, JASON         )
17 AWAD and "John Does" name           )
   fictitious, actual name and number  )
18 unknown, et al.,                    )
                                        )
19          Defendants.                 )
   _____ )

20

21       MICHAEL RENO, ERIC KIEFABER, DENNIS RHOADES, JASON HARRIS,

22 PREMIER TAMAYO, WILFREDO ALLANIGUE, ARIES BIHASA, AND MARCO

23 BAKHTIARI, individually and on behalf of others similarly situated, by and through

24 their attorneys, Leon Greenberg Professional Corporation, as and for a Complaint

25 against the defendants, states and alleges, as follows:

26       **JURISDICTION, PARTIES AND PRELIMINARY STATEMENT**

27       1.      This Court has jurisdiction over the claims alleged herein because

28 Plaintiff seeks relief pursuant to the Fair Labor Standards Act ("FLSA") for the

1

Defendants' failure to pay minimum wages as required by 29 U.S.C. § 201-218 et. seq. The employment relationship alleged to exist between the parties is subject to the FLSA because the defendants are properly deemed "employers" within the meaning of the FLSA as they have in excess of $500,000 in yearly revenue and the employment alleged involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

2.      The Court has supplemental jurisdiction over the State Law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

3.      The plaintiffs, MICHAEL RENO ERIC KIEFABER, DENNIS RHOADES, JASON HARRIS, PREMIER TAMAYO, WILFREDO ALLANIGUE, ARIES BIHASA, AND MARCO BAKHTIARI, (the "individual plaintiffs" or the "named plaintiffs") are residents of Clark County in the State of Nevada and are current or former taxicab driver employees of the defendants.

4.      The defendant, WESTERN CAB COMPANY, (hereinafter referred to as "Western Cab" or one of the "defendants") is a corporation existing and established pursuant to the laws of the State of Nevada with its principal place of business in the County of Clark, State of Nevada and conducts business in Nevada.

5.      Each of the defendants, HELEN TOBMAN MARTIN, MARILYN TOBMAN MORAN, JANIE TOBMAN MOORE, MARTHA SARVER and JASON AWAD (the "individual defendants") are, for the purposes of the claims made herein under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), an employer of the named plaintiff and the members of the putative plaintiff class as each has acted on behalf of an employer and/or acted as an employer by willfully, intentionally, knowingly or otherwise promoting, allowing, directing or otherwise creating the compensation policies alleged herein that violate the FLSA, each such individual defendant also exercising the power they had with the other defendant, Western Cab, by virtue of their status as an officer and/or manager and/or owner and/or director of the same to continue, create, or allow such policies to flourish and

remain in existence.  In addition, defendants HELEN TOBMAN MARTIN and MARTHA SARVER, after close examination by the United States Department of Labor, were deemed by that agency to be employers for the purposes of the FLSA and on that basis are so alleged in this action to be FLSA employers.

6.    The defendants "John Does" are natural persons the number of such persons, and their identities, being currently unknown to the plaintiff but known to the defendants.   Such persons are alleged to be liable to the plaintiff and those similarly situated under the FLSA on the same basis as the individual defendants, in that such persons have acted on behalf of an employer or as an employer in respect to the FLSA violations alleged herein.  Upon appropriate discovery being undertaken plaintiff proposes to identify and properly name all such persons as defendants in this case in respect to the FLSA claims made herein.

**CLASS ACTION AND COLLECTIVE ACTION ALLEGATIONS**

7.    This is a class and collective action brought on behalf of all persons who worked for the defendants within the last three years as taxi drivers in respect to the FLSA claims made herein and within such other applicable statute of limitations that governs the claims made under Nevada Law.

8.    The class and collective action may include one or more sub-classes consisting of the drivers directly employed by Western Cab, if the Court finds that more manageable.

9.    Upon information and belief, there are no collective bargaining agreements applicable to the plaintiff and/or members of the proposed plaintiff class which waive the provisions of Article 15, Section 16 of the Constitution of the State of Nevada or any other protections afforded to employees by Nevada law.

10.    The plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. §23 on behalf of themselves and a class of all similarly situated persons employed by the defendant Western Cab in the State of Nevada.

11.    The class of similarly situated persons for Fed. R. Civ. P. 23 purposes

consists of all persons employed by defendant Western Cab from December 13, 2012, or commencing on such other date that is found applicable, and continuing until date of judgment, such persons also being employed as taxi drivers by Western Cab such employment involving the driving of taxi cabs for such defendant in the State of Nevada.

12.     A common circumstance of the taxi drivers giving rise to the Nevada state law class action allegations and the Fair Labor Standards Act collective action allegations is that while they were employed by defendants those taxi drivers were not paid the minimum wage required by Nevada's Constitution, Article 15, Section 16 for many or most of their work weeks that they worked in that their hourly compensation, when calculated pursuant to the requirements of said Nevada Constitutional provision and the FLSA did not equal at least the minimum hourly wage required by those laws. An additional common circumstance is that for those taxi drivers employed by defendants after March 23, 2018, they have been required to have their tips subjected to an improper use by the defendants in violation of the FLSA.

13.     Pursuant to Section 16(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the individual plaintiff brings this Complaint as a collective action (also commonly referred to as an "opt-in" class), on behalf of themselves and all persons similarly situated, to wit a putative class of taxi drivers employed by the defendants during the three years prior to the filing of this Complaint until entry of judgment after trial, such taxi drivers not being paid, on occasion, minimum wage in accordance with the FLSA.   This action is also brought on behalf of those taxi drivers employed by defendants after March 23, 2018 who have been required to have their tips subjected to an improper use by the defendants in violation of the FLSA.   Such weeks of work where defendants failed to pay such minimum wages are known to defendants who possess the representative plaintiffs' working time and compensation records and often arose during slow periods of business for the Las Vegas taxi industry, the representative plaintiffs having experienced at least one such failure to pay minimum

wages during one or more weeks in the month of December during the three years preceding the filing of this Complaint.

14.    The failure of the defendants to pay minimum wages to the individual plaintiffs and the putative class and collective action members arises from defendants' policy of forcing the individual plaintiffs and those similarly situated to pay for the gasoline needed to fuel Western Cab's taxicabs.  Those payments for fuel made by the individual plaintiffs and those similarly situated were not reimbursed, at all, by the defendants, or only partially reimbursed by the defendants, and after the cost of making those payments is considered the individual plaintiffs and those similarly situated were earning less than $7.25 an hour in wages during some weeks of their employment for defendants.

15.    Defendant Western Cab has admitted, via a sworn declaration of its attorney, John T. Moran Jr., that its policy since at least February of 2012 is to require that all of its taxi drivers pay for the fuel costs of Western Cab's taxi cabs from their tips.  *See,* Ex. "A" ¶ 9.

16.    The named plaintiffs are informed and believe, and based thereon alleges that there are at least 100 putative class action members.  The actual number of class members is readily ascertainable by a review of the defendants' records through appropriate discovery.

17.    There is a well-defined community of interest in the questions of law and fact affecting the class as a whole.

18.    Proof of a common or single set of facts will establish the right of each member of the class to recover.  These common questions of law and fact predominate over questions that affect only individual class members.  The individual plaintiffs' claims are typical of those of the class.

19.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Due to the typicality of the class members' claims, the interests of judicial economy will be best served by adjudication of this

lawsuit as a class action.  This type of case is uniquely well-suited for class treatment since the employer's practices were uniform and the burden is on the employer to establish that its method for compensating the class members complies with the requirements of Nevada law and the FLSA.

20.     The individual plaintiffs will fairly and adequately represent the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class and has retained to represent them competent counsel experienced in the prosecution of class action cases and will thus be able to appropriately prosecute this case on behalf of the class.

21.     The individual plaintiffs and their counsel are aware of their fiduciary responsibilities to the members of the proposed class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for all members of the proposed class.

22.     There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  In addition, the class members' individual claims are small in amount and they have no substantial ability to vindicate their rights, and secure the assistance of competent counsel to do so, except by the prosecution of a class action case.

**AS AND FOR A FIRST CLAIM FOR RELIEF ON BEHALF OF THE NAMED PLAINTIFF AND ALL PERSONS SIMILARLY SITUATED PURSUANT TO NEVADA'S CONSTITUTION AGAINST DEFENDANT WESTERN CAB**

23.     The named plaintiffs repeat all of the allegations previously made and bring this First Claim for Relief pursuant to Article 15, Section 16, of the Nevada Constitution against defendant Western Cab only.

24.     Pursuant to Article 15, Section 16, of the Nevada Constitution the named plaintiffs and the class members were entitled to an hourly minimum wage for every

hour that they worked for defendant Western Cab and the named plaintiffs and the class members were often not paid such required minimum wages, in that for some of the weeks they worked, the plaintiffs' and the class members' wages did not equal either the $7.25 per hour or $8.25 per hour required by the Nevada Constitution.

25.     Western Cab's violation of Article 15, Section 16, of the Nevada Constitution involved malicious and/or dishonest and/or oppressive conduct by the defendant sufficient to warrant an award of punitive damages for the following, amongst other reasons:

(a) Defendant despite having, and being aware of, an express obligation under Article 15, Section 16, of the Nevada Constitution, such obligation commencing no later than July 1, 2007, to advise the plaintiff and the class members, in writing, of their entitlement to the minimum hourly wage specified in such constitutional provision, failed to provide such written advisement;

(b) Defendant was aware that the highest law enforcement officer of the State of Nevada, the Nevada Attorney General, had issued a public opinion in 2005 that Article 15, Section 16, of the Nevada Constitution, upon its effective date, would require defendant and other employers of taxi cab drivers to compensate such employees with the minimum hourly wage specified in such constitutional provision.  Defendant consciously elected to ignore that opinion and not pay the minimum wage required by Article 15, Section 16, of the Nevada Constitution to its taxi driver employees in the hope that it would be successful, if legal action was brought against it, in avoiding paying some or all of such minimum wages;

(c) Defendant, to the extent it believed it had a colorable basis to

7

legitimately contest the applicability of Article 15, Section 16, of the Nevada Constitution to its taxi driver employees, made no effort to seek any judicial declaration of its obligation, or lack of obligation, under such constitutional provision and to pay into an escrow fund any amounts it disputed were so owed under that constitutional provision until such a final judicial determination was made;

(d) Defendant maliciously created its policy of forcing payment of the fuel costs of its taxicabs on its taxi drivers in a cash and "off the books" fashion whereby those expenses did not appear on its payroll or other records documenting the actual wages earned by its taxi drivers.  It implemented that policy to create a false appearance to anyone examining its records, such as the United States Department of Labor, that it was in compliance with the minimum wage standards applicable to its taxi drivers when, in fact, it was violating those standards.  Such violation of those minimum wages standards arose because after considering the cost to the taxi drivers of paying those fuel expenses such drivers were actually earning less than the applicable minimum wage.   Western Cab was aware it was violating Nevada's Law by engaging in that practice and failing to pay minimum wages but continued to do so anyway.

26.     Western Cab engaged in the acts and/or omissions detailed in paragraph 25 in an intentional scheme to maliciously, oppressively and dishonestly deprive its taxi driver employees of the hourly minimum wages that were guaranteed to those employees by Article 15, Section 16, of the Nevada Constitution.  It so acted in the hope that by the passage of time whatever rights such taxi driver employees had to such minimum hourly wages owed to them by Western Cab would expire, in whole or in part, by operation of law.  Western Cab so acted consciously, willfully, and

intentionally to deprive such taxi driver employees of any knowledge that they might be entitled to such minimum hourly wages, despite Western Cab's obligation under Article 15, Section 16, of the Nevada Constitution to advise such taxi driver employees of their right to those minimum hourly wages. Western Cab's malicious, oppressive and dishonest conduct is also demonstrated by its failure to make any allowance to pay such minimum hourly wages if they were found to be due, such as through an escrow account, while seeking any judicial determination of their obligation to make those payments.

27. The named plaintiffs seek all relief available to them and the alleged class under Nevada's Constitution, Article 15, Section 16 including appropriate injunctive and equitable relief to make Western Cab cease its violations of Nevada's Constitution and a suitable award of punitive damages.

28. The named plaintiffs on behalf of themselves and the proposed plaintiff class members, seek, on this First Claim for Relief, a judgment against Western Cab for minimum wages owed since December 14, 2012 or such other applicable dates and continuing into the future, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, the plaintiffs and the class members along with suitable injunction and other equitable relief barring Western Cab from continuing to violate Nevada's Constitution, a suitable award of punitive damages, and an award of attorneys' fees, interest and costs, as provided for by Nevada's Constitution and other applicable laws.

**AS AND FOR A SECOND CLAIM FOR RELIEF PURSUANT TO THE FAIR LABOR STANDARDS ACT AGAINST ALL DEFENDANTS**

29. The named plaintiffs repeat all of the allegations previously made and brings this Second Claim for Relief pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all persons who have filed, or will file, their written consents with the Court to join this lawsuit and against all defendants including the individual defendants.

30.     Pursuant to the applicable provision of the FLSA, 29 U.S.C. § 206, the named plaintiffs who have filed consents to join this case and the members of the proposed plaintiff class were entitled to a minimum hourly wage.  The plaintiff and the members of the proposed plaintiff class did not, during every work week, receive the minimum wage of at least $7.25 an hour required by Section 206 of the FLSA.

31.     While employers under the FLSA can avail themselves of a "tip credit" against its minimum wage, allowing them under certain circumstances to pay a minimum hourly wage of less than $7.25 an hour, defendants could not claim that tip credit in respect to the plaintiffs who have filed consents to join this case and those similarly situated.   Defendants could not claim such a "tip credit" because, as discussed *supra*, they failed to comply with 29 U.S.C. § 203(m) which requires that the tips plaintiffs and those similarly situated receive be completely retained by such employees and *not* be taken or used by their employer for any purpose.  They failed to comply with such requirement of the FLSA by requiring, as demonstrated in Ex. "A" ¶ 9, that plaintiffs who have filed consents to join this case and those similarly situated use their tips to pay for the fuel costs incurred by Western Cab in operating its taxi cabs.  Such requirement rendered defendants ineligible to claim any tip credit under 29 U.S.C. § 203(m) and required that they pay the plaintiffs who have filed consents to join this case and those similarly situated the full FLSA minimum wage of at least $7.25 an hour for every hour worked during every work week.

32.     Commencing March 23, 2018 the provisions of 29 U.S.C. § 203(m) were amended to prohibit employers from using or taking any tips earned by their employees for any purpose, even if the employee was earning a wage in excess of $7.25 an hour.  Accordingly, in respect to those persons similarly situated to the named plaintiffs who have filed consents to join this case who worked on or after March 23, 2018, such persons are entitled to collect from defendants the full amount of the fuel costs defendants forced such persons to pay for Western Cab's taxi cabs, and equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).  That is

10

because such forced payment of fuel costs violated 29 U.S.C. § 203(m) as revised on March 23, 2018 as those costs were paid from the tips of those persons, as documented in Ex. "A" ¶ 9, and constituted an improper use or retention of employee tips by defendants in violation of the FLSA.

33.     Defendants' violations of the FLSA were willful and intentional.  Those willful and intentional violations of the FLSA are demonstrated, by among other things, the defendants' implementation of their policy in February of 2012 requiring their taxi drivers to pay the fuel costs of Western Cab's taxi cabs from their tips, Ex. "A" ¶ 9.  By implementing such policy they failed to both comply with the tip credit provisions of 29 U.S.C. § 203(m) and pay the full $7.25 an hour minimum wage required by the FLSA, and effectuated such policy in response to action by the United States Department of Labor (the "USDOL").  Specifically, they instituted that policy in response to a prior audit and FLSA enforcement effort by the USDOL which resulted in a payment by Western Cab in January of 2012 of over $280,000 in unpaid FLSA minimum wages to Western Cab taxi drivers as overseen by the USDOL.  The February 2012 policy of forcing taxi drivers to pay for the fuel costs of Western Cab's taxi cabs was intended to deceive the USDOL, and all other persons or government agencies, into believing Western Cab was paying the minimum wage to its taxi driver employees required by the FLSA.  That belief was created by the fact that in examining the payroll records of Western Cab, and the records of the hours of work of the Western Cab taxi drivers, from February of 2012 and later, it appears that such cab drivers were receiving at least the minimum hourly wage required by the FLSA.   But in fact, as Western Cab was aware of, or would have been aware of if it had made reasonable efforts to understand the law, such records communicated a knowingly false depiction of such FLSA compliance as (A) The amounts so paid by the taxi drivers for fuel for Western Cab's taxi cabs, which was not recorded on those payroll records, must be deducted from the gross wages that Western Cab paid those taxi drivers in determining if the FLSA minimum hourly wage has been paid, and after

such deduction was performed during certain work weeks the wages paid to such taxi drivers were less than the minimum hourly wage required by the FLSA; and (B) Forcing the taxi drivers to use their tips to pay for the fuel used by Western Cab's taxi cabs disallowed Western Cab's claim that it was entitled to a tip credit under 29 U.S.C. § 203(m) and as a result it had to pay the full $7.25 an hour minimum wage required by the FLSA, but such payroll records did not indicate that Western Cab could not claim such a tip credit and only demonstrated FLSA minimum hourly wage compliance if such a tip credit was available to Western Cab, which it was not.

34.   The plaintiffs who have filed consents to join this case , on behalf of themselves and all other similarly situated persons who consent in writing to join this action, seeks, on this First Claim for Relief, a judgment for unpaid minimum wages, and additional liquidated damages of 100% of any unpaid minimum wages, and for such persons similarly situated employed on or after March 23, 2018 the amount of fuel costs such persons were forced to pay since those costs constituted an improper taking of those persons' tips by the defendants in violation of the FLSA, along with an equal amount of liquidated damages, such sums to be determined based upon an accounting of the hours worked by the plaintiffs who have filed consents to join this case and any such other persons who consent to join this action, and the wages they were paid and the fuel costs they were forced to pay, and the plaintiffs who have filed consents to join this case also seek an award of attorneys' fees, interest and costs as provided for by the FLSA.

**AS AND FOR A THIRD CLAIM FOR RELIEF PURSUANT TO NEVADA REVISED STATUTES § 608.040 ON BEHALF OF THE NAMED PLAINTIFFS RENO, RHOADES, TAMAYO, ALLANIGUE, AND THE PUTATIVE CLASS AGAINST DEFENDANT WESTERN CAB COMPANY**

35.   Plaintiffs repeat and reiterate each and every allegation previously made herein.

36.   The named plaintiffs Reno, Rhoades, Tamayo, and Allanigue bring this Third Claim for Relief against the defendant Western Cab pursuant to Nevada Revised

Statutes § 608.040 on behalf of themselves and the alleged class of all similarly situated employees of the defendant Western Cab.

37.   The named plaintiffs Reno, Rhoades, Tamayo, and Allanigue have been separated from their employment with Western Cab within the two years prior to the filing of the instant action, and at the time of such separation were owed unpaid wages by the defendant Western Cab, including the unpaid minimum wages alleged herein.

38.   Western Cab has failed and refused to pay the named plaintiffs Reno, Rhoades, Tamayo, and Allanigue and numerous members of the putative plaintiff class who are the former employees of  Western Cab their earned but unpaid wages, such conduct by  Western Cab constituting a violation of Nevada Revised Statutes § 608.020, or § 608.030 and giving such named plaintiffs and similarly situated members of the putative class of plaintiffs a claim against  Western Cab for a continuation after the termination of their employment with  Western Cab of the normal daily wages Western Cab would pay them, until such earned but unpaid wages are actually paid or for 30 days, whichever is less, pursuant to Nevada Revised Statutes § 608.040.

39.   As a result of the foregoing, the named plaintiff Reno, Rhoades, Tamayo, and Allanigue seeks on behalf of themselves and the similarly situated putative plaintiff class members a judgment against the defendant Western Cab for the wages owed to them and such class members as prescribed by Nevada Revised Statutes § 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorneys' fees.

///

///

///

///

///

///

1    WHEREFORE, plaintiffs demands the relief on each cause of action as alleged

2  aforesaid.    Plaintiff demands a trial by jury on all issues so triable.

3

4  Dated this 27th day of November, 2018

5                          Leon Greenberg Professional Corporation

6                          By: /s/ *Leon Greenberg*

7                          LEON GREENBERG, Esq.
                           Nevada Bar No.: 8094
8                          2965 South Jones Blvd- Suite E3
                           Las Vegas, Nevada 89146
9                          Tel (702) 383-6085
                           Fax (702) 385-1827
10
                           Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

EXHIBIT "A"

## DECLARATION OF JOHN T. MORAN, JR.

Under penalties of perjury, John T. Moran, Jr. states as follows:

1.      I am and for many years have been General Counsel for Western Cab Company ("Western Cab").

2.      On March 26, 2012, Western Cab recognized the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (AFL-CIO/CLC) ("the Union") as the exclusive bargaining representative of Western Cab's taxi cab drivers.  Western Cab maintains documents and information regarding its bargaining with the Union in the course of its regularly conducted business activity.

3.      Western Cab was initially represented by Norman Kirshman in its negotiations with the Union.  Attached hereto as Exhibit 3-A are Norman Kirshman's notes regarding the September 19, 2012 negotiations with the Union.  These notes reflect that the Union was aware that the driver paid 100% of the gas.

4.      Attached hereto as Exhibit 3-B is a memorandum of September 25, 2013 which Martha Sarver, the General Manager of Western Cab, distributed to all of Western Cab's then drivers to update them on the status of our negotiations with the Union.

5.      In August 2013, Western Cab retained Greg Smith to represent it in negotiations with the Union.  Attached hereto as Exhibit 3-C is a March 6, 2014 e-mail from Greg Smith to the Union informing the Union that the drivers keep their own gas receipts.

6.      Attached hereto as Exhibit 3-D is an e-mail from Greg Smith to the Union dated May 22, 2014.

7.      On June 10, 2015, I attended a bargaining session with Greg Smith and the Union. On that date, Greg presented the Union with Western Cab's latest contract proposal.

1

8.    Attached as Exhibit 3-E is the cover page of Western Cab's contract proposal on June 10, 2015 and the excerpt on Article 18 Wages. As part of Western Cab's proposal on wages, Western Cab proposed in accordance with its practice since February 2012 that, "Every driver must, at the end of his shift, return his cab with verified full tank of gas and in good operational order."

9.    My understanding is that Western Cab cannot make a unilateral change regarding wages without first bargaining with the Union. Western Cab has not changed its requirement that its drivers pay for their own gasoline out of their tips since this practice was first initiated in February 2012. Since June 10, 2015, the Union has not requested any further in person negotiations for a collective bargaining agreement.

10.    When Greg Smith retired from the practice of law, Malani Kotchka became Western Cab's bargaining representative.

11.    The National Labor Relations Board has never found that Western Cab violated the National Labor Relations Act regarding its requirement that their drivers return their cabs with a full tank of gas.

12.    On June 7, 2017, on behalf of Western Cab, Malani Kotchka notified the Union that "Western Cab will contact or try to contact these drivers to inform them that it will pay them the back minimum wage which it has computed. Western Cab will make reasonable efforts to obtain acknowledgements of the payments to the drivers and will give them an opportunity to review records if the individual questions the amount calculated by Western Cab."

I declare under penalty of perjury of the law of the State of Nevada that the foregoing is true and correct.

Dated _____, 201

_____
John T. Moran, Jr.

3

EXHIBIT "B"

Electronically Filed
2/16/2018 3:59 PM
Steven D. Grierson
CLERK OF THE COURT

1  ORDR
   MALANI L. KOTCHKA
2  Nevada Bar No. 283
   HEJMANOWSKI & McCREA LLC
3  520 South Fourth Street, Suite 320
   Las Vegas, NV 89101
4  Telephone: (702) 834-8777
   Facsimile: (702) 834-5262
5  mlk@hmlawlv.com

6

7  *Attorneys for Defendant*

8                          DISTRICT COURT

9                      CLARK COUNTY, NEVADA

10

11 LAKSIRI PERERA, IRSHAD AHMED, and       )
   MICHAEL SARGEANT, individually,         )  Case No.: A-14-707425-C
12                                          )
              Plaintiffs,                   )  Dep't. No.: VII
13                                          )
   v.                                       )
14                                          )  ORDER DENYING CLASS
   WESTERN CAB COMPANY,                     )  CERTIFICATION, INJUNCTIVE
15                                          )  RELIEF AND APPOINTMENT OF A
              Defendant.                     )  SPECIAL MASTER
16                                          )
                                            )
17 ─────────────────────────────           )

18

19        Plaintiffs' Motion for Injunctive Relief and Class Certification pursuant to NRCP Rule

20 23(b)(2) and Rule 23(b)(3) having come on for hearing on August 17, 2017, and Plaintiffs'

21 Motion on Order Shortening Time to Enjoin Defendants From Securing Releases and Other

22 Relief having come on for hearing on June 22, 2017, and Leon Greenberg appearing on behalf of

23 Plaintiffs and Malani L. Kotchka appearing on behalf of Defendant,

24        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that both motions are

25 denied.  Plaintiffs Laksiri Perera, Irshad Ahmed and Michael Sargeant are former employees of

26 Defendant who ceased working for Defendant in October 2012, July 2013 and June 2014

27

28

                                      1

FEB 12 2018

respectively.  September 23, 2012 is the earliest date to fall within the statute of limitations in this action.  The three Plaintiffs seek an order:  (1) certifying as class members *all* of Defendant Western Cab Company's ("Western's") taxi drivers employed between July 1, 2007, and the date of the anticipated order, including current and other former employees; (2) certifying this case as a class action for wages allegedly due on account of Western's purported violation of Nevada's Minimum Wage Amendment ("MWA"); (3) appointing Plaintiffs' attorneys Leon Greenberg and Dana Sniegocki as class counsel; (4) enjoining Western from requiring its drivers to pay for fuel for Western's taxi cabs to the extent doing so would reduce their non-tipped wages paid by Western to an amount less than the amount required by  the MWA; (5) enjoining Western to undertake certain so called "necessary" record keeping, reporting and enforcement protocols, all undefined; (6) appointing a Special Master, to be paid by Western "as necessary to vigorously promote [the injunction's] enforcement;" (7) awarding Plaintiffs' counsel fees and costs for securing injunctive relief and imposing monetary sanctions upon defendant; and (8) enjoining Western from securing releases and other relief.  The Court denies all of this requested relief. Plaintiffs have failed to demonstrate the need for injunctive relief at this time.  Even assuming the Plaintiffs have a reasonable probability of success, monetary back wages would be an adequate remedy.  Any issues regarding record keeping and reporting are covered by discovery rules and are better dealt with through the discovery process.  The United States Department of Labor did not find in 2013 that Western owed any minimum wage to its drivers.  The Court does not believe that the issues presented here are so unique or complex as to warrant appointment of a special master pursuant to NRCP 53.

IT IS FURTHER ORDERED that the Plaintiffs do not meet the requirements under NRCP 23(a) for class certification so the motion to certify the class is denied.  *Shuette v. Beazer Homes Holding Corp.*, 121 Nev. 837, 847, 124 P.3d 530, 538 (2005).  Class certification requires

1  a finding of each of the elements set forth in NRCP 23(a). The first requirement is numerosity,

2  that the class is so numerous a joinder of all members is impractical. There is no definitive

3  number to reach this requirement. Since the filing of this lawsuit, Western has settled with a

4  large portion of the purported class. The remaining members of the potential class are all taxi

5  drivers in the same geographic area. They are asserting claims for which, if proven, they may

6  constitutionally recover attorney's fees. Plaintiffs have not pled that they lack resources to bring

7

8  ///

9  ///

10 ///

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

1    and maintain individual lawsuits.  Since the Court is finding that the numerosity requirement is

2    not met, the Court will not address the remaining factors under NRCP 23(a).

3         Dated this *14th* day of February, 2018.

4

5                                                    _____

6                                                    Honorable Linda Bell
                                                     District Court Judge

7    Submitted by:

8

9    _____

10   Malani L. Kotchka (SBN 0283)
     HEJMANOWSKI & McCREA LLC

11   520 South Fourth Street, Suite 320
     Las Vegas, NV 89101

12   Telephone: (702) 834-8777
     Facsimile: (702)834-5262

13   mlk@hmlawlv.com

14   *Attorneys for Defendant*

15

16   Approved as to form and content by:

17

18   _____

19   Leon Greenberg (SBN 8094)
     Dana Sniegocki (SBN 11715)

20   LEON GREENBERG PROF. CORP.
     2965 South Jones Blvd., Suite E-3

21   Las Vegas, NV 89146
     Telephone: (702) 383-6085

22   Facsimile: (702) 385-1827
     dana@overtimelaw.com

23   leongreenberg@overtimelaw.com

24   *Attorneys for Plaintiffs*

25

26

27

28
                                          4

EXHIBIT "C"

LEON GREENBERG, ESQ., SBN 8094
DANA SNIEGOCKI, ESQ., SBN 11715
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
dana@overtimelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MICHAEL RENO and ERIC
KIEFABER, Individually and on behalf
of others similarly situated,

   Plaintiff,

vs.

WESTERN CAB COMPANY, HELEN
TOBMAN MARTIN, MARILYN
TOBMAN MORAN, JANIE TOBMAN
MOORE, MARTHA SARVER, JASON
AWAD and "John Does" name
fictitious, actual name and number
unknown, et al.,

   Defendants.

Case No.: 2:18-CV-00840-APG-NJK

**DECLARATION OF MARCO BAKHTIARI**

  MARCO BAKHTIARI, hereby affirms, under penalty of perjury, that he has personal knowledge of the following statements:

  1. I am a former employee of Western Cab and worked for them as a taxi driver in 2014 and possibly a portion of 2013 and/or 2015, I was employed by them for about one year.

  2. While I was employed as a taxi driver for Western Cab, myself and all other taxi drivers employed by Western Cab were paid wages on a basis that considered the amount of our "book" or fares collected each shift, meaning if we

1

1  collected more fares we would receive more pay.  We were also required to pay for all
2  of the gasoline needed to fuel the taxi cabs used by Western Cab that we drove.  We
3  paid for that gasoline ourselves, out of our own funds, often having to use the tips we
4  collected from customers during our work shifts to pay for that gasoline.  Typically, I
5  would estimate that gasoline cost me on average about $25 to $30 per each shift I
6  drove for Western Cab.  I would pay for that gasoline using my own money, usually
7  the tips I received from my passengers.

8     3.     During some shifts and some weeks I worked for Western Cab I also did
9  not receive the required Nevada minimum wage of $7.25 or $8.25 per hour after
10  deducting the amount I was required to pay for gasoline for the taxi Western Cab had
11  me drive.  This is because after paying for the gasoline for the taxicabs I was driving
12  for Western Cab, and that Western Cab did not reimburse me for, my wages per hour
13  were less than $7.25 or $8.25 an hour.

14     4.     I am requesting that the Court allow the complaint in this case to be
15  amended so I can be added as a plaintiff in the case on the claims made in this case
16  under Nevada law for unpaid minimum wages.

17     5.     I affirm I am over 21 years of age and I make this statement, which I have
18  read and declare to be true, of my own free will.

19
20
21  11 15 18
22  DATE                                        MARCO BAKHTIARI
23
24
25
26
27
28