# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL RENO and ERIC KIEFABER, | Case No.: 2:18-cv-00840-APG-NJK |
| Plaintiffs, | **ORDER (1) GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND (2) DENYING PLAINTIFFS' MOTION TO CONFIRM SUPPLEMENTAL JURISDICTION** |
| v. | |
| WESTERN CAB COMPANY, HELEN TOBMAN MARTIN, MARILYN TOBMAN MORAN, JANIE TOBMAN MOORE, MARTHA SARVER, and JASON AWAD, | |
| | [ECF Nos. 9, 10, 32, 57] |
| Defendants, | |

Plaintiffs Michael Reno and Eric Kiefaber are taxi drivers formerly employed by Western Cab Company (WCC). They have sued WCC, Helen Tobman Martin, Marilyn Tobman Moran, Janie Tobman Moore, Martha Sarver, and Jason Awad for failure to pay minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA) and the Minimum Wage Amendment to the Constitution of the State of Nevada, Article 15, Section 16. ECF No. 17. The plaintiffs have also sued for additional compensation under Nevada Revised Statutes §§ 608.020-608.040 for failure to provide unpaid wages after they were discharged or quit employment with WCC. The plaintiffs bring this action on behalf of themselves and a putative class of other WCC taxi drivers.

The defendants move to dismiss in three separate motions filed by Martin, Moran, Moore, and Sarver (ECF No. 9), WCC (ECF No. 10), and Awad (ECF No. 32). The plaintiffs move for an order confirming supplemental jurisdiction over their state law claims. ECF No. 57.

I grant the defendants' motions to dismiss the FLSA claims that are based on alleged violations of 29 U.S.C. § 203(m)(2)(B), but I deny their motions to dismiss the other FLSA claims. I decline to exercise supplemental jurisdiction over the plaintiffs' Nevada claims.[1]

**I. ANALYSIS**

**a. Preliminary Issues**

*1. Timeliness of First Amended Complaint*

Awad asks me to dismiss or strike the amended complaint because it was untimely and filed without obtaining the required leave of court. Awad argues that because Martin and Moran were served with the original complaint on June 7, 2018, any amendment filed after June 28 is untimely under Federal Rule of Civil Procedure 15(a)(1) and should therefore be dismissed. ECF No. 32 at 6-7. The plaintiffs respond that the amended complaint was timely because it was filed within 21 days after the service of the other defendants' responsive pleadings. ECF No 39 at 2.

Rule 15(a)(1) states that,

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Rule 15(a) is disjunctive and provides two options for determining the deadline for filing amendments. Because the original defendants filed their motions to dismiss on July 11, 2018, the plaintiffs had 21 days after that to file an amended complaint. They filed their amended

---

[1] I will address the plaintiffs' motions for circulation (ECF No. 11), for sanctions (ECF No. 36), to supplement the motion for circulation (ECF No. 57), and to amend (ECF No. 63) in later orders.

complaint on August 1, 2018, which is within the allowed time. I therefore deny Awad's motion to dismiss or strike the amended complaint.

   *2. Consolidation of Original and Amended Complaints*

There are two separate lines of filings in this case, one stemming from the original complaint filed by Reno (ECF No. 1) and one from the first amended complaint filed by Reno and Kiefaber (ECF No. 17). The defendants named in the original complaint—WCC, Martin, Moran, Moore, and Sarver—moved to dismiss the original complaint. ECF Nos. 9, 10. The plaintiffs subsequently filed their first amended complaint (ECF No. 17) and then responded to the two motions to dismiss the original complaint (ECF No. 20). The original defendants replied to the plaintiffs' response but referenced the amended complaint in doing so. ECF No. 22. Awad, who was named for the first time in the amended complaint, filed a motion to dismiss that complaint (ECF No. 32), to which the plaintiffs responded (ECF No. 32).

Normally, the original defendants' motions to dismiss would be deemed moot because they were directed at the original, now-superseded, complaint. However, the amended complaint is nearly identical to the original complaint,[2] the plaintiffs responded to the motions to dismiss without raising the mootness issue, and the amended complaint was eventually recognized by all the defendants in their filings. Therefore, I will treat all responsive filings to the original complaint as responsive to the amended complaint.[3]

---

[2] The original and amended complaints are identical save for the specific defendants named in individual claims, the inclusion of an additional plaintiff (Kiefaber), and the inclusion of an additional defendant (Awad).

[3] The parties are advised to better adhere to the Rules in the future. In addition to the confusion mentioned above, the parties' inclusion of and extensive reference to exhibits that I cannot consider, as well as their penchant for relying on arguments raised for the first time in replies, surreplies, or in separate lines of filings, makes it very difficult to properly address their concerns, and does not serve the parties' or the court's interests.

3

**b. Failure to State a Plausible FLSA Claim**

All the defendants move to dismiss the FLSA claim, arguing that (1) neither of the named plaintiffs was a WCC employee after the May 2018 amendment to FLSA § 203(m)(2)(B), and (2) many of the putative class members have signed arbitration agreements preventing them from participating in this case. Defendants WCC, Martin, Moran, Moore, and Sarver move to dismiss, arguing that (3) the FLSA's two-year limitation period has run on Kiefaber's FLSA claim, (4) the U.S. Department of Labor (DOL) has already determined that the defendants do not owe any back wages for minimum wages under the FLSA, (5) Reno has acknowledged that he has already been given an accurate amount of back pay for minimum wages owed to him through June 15, 2017, and (6) the FLSA claim is not sufficiently "context specific" because it does not allege precise weeks in which the defendants failed to pay the plaintiffs the minimum wage. WCC separately moves to dismiss the FLSA claims, arguing that (7) the plaintiffs cannot bring a complaint without the participation of their labor union. Awad separately moves to dismiss the FLSA claims against him, arguing that (8) the amended complaint does not sufficiently allege that he is an employer under the FLSA.

*1. Section 203(m)(2)(B) Violation*

All of the defendants argue that the plaintiffs cannot maintain a claim under 29 U.S.C. § 203(m)(2)(B) because neither of the plaintiffs was employed by WCC after Congress amended the FLSA in March 2018 to include that provision. ECF Nos. 9 at 5, 10 at 5, 32 at 13. The plaintiffs do not address this ground in their response. Nor do they provide the dates that they were employed with WCC, except to say that they are no longer employees. The only language in the amended complaint relating to the § 203 claims suggests that the allegations concern the potential class, not the named plaintiffs. ECF No. 17 at 4 (stating that the "action is also brought

4

on behalf of those taxi drivers employed by defendants after March 23, 2018 who have been required to have their tips subjected to an improper use by the defendants in violation of the FLSA").

Section § 203(m)(2)(B) states that, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." This provision was added to the FLSA by a March 2018 amendment, so a plausible claim for a violation of it necessarily requires that the plaintiffs be employed in or after March 2018. The plaintiffs do not provide sufficient factual support that they were employed by WCC on or after that date. Additionally, under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of that motion." The plaintiffs do not respond to the defendants' motion for dismissal of the § 203 claims. I therefore grant the motions to dismiss the FLSA claims that are based on alleged violations of 29 U.S.C. § 203(m)(2)(B).

*2. Arbitration Agreements*

The defendants argue that the plaintiffs cannot represent any of WCC's drivers in a collective action because WCC's current drivers have signed arbitration agreements. ECF Nos. 9 at 7, 10 at 8, 32 at 14. The defendants do not allege, and it does not appear, that either of the named plaintiffs signed those arbitration agreements; both Reno and Kiefaber were terminated before the agreements were disseminated by WCC to their employees. Thus, the existence and legitimacy of those agreements do not affect the viability of the named plaintiffs' individual claims. I therefore do not address them in this order.

/ / / /

*3. Statute of Limitations*

WCC, Martin, Moran, Moore, and Sarver argue that Kiefaber's FLSA claims against them are barred by the limitation period set forth in 29 U.S.C. § 255(a). That statute provides a three-year limitation period for willful violations, but a two-year period otherwise. The defendants contend the alleged violation was not willful (and thus is subject to the two-year limitation period) because WCC acted in accordance with a DOL evaluation that WCC was entitled to use a tip credit. ECF Nos. 22 at 4, 23 at 4.[4] The plaintiffs respond that whether the purported violation was willful is a question of fact for trial, and that even if I were to evaluate willfulness at this time, compliance with the DOL evaluation is not dispositive. ECF No. 24 at 13-15.

Section 255(a) states that an action for failure to pay minimum wage must be commenced "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." "A new cause of action accrues at each payday immediately following the work period for which compensation is owed." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). If the plaintiffs' "complaint alleges willful violations of the FLSA . . . ," I "must assume that a three-year statute of limitation . . . applies." *Id.* Similarly, "[a] claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is

---

[4] These grounds for dismissal were raised for the first time by WCC, Martin, Moran, Moore, and Sarver in their reply. ECF No. 23. Because Kiefaber was not included as a plaintiff until the amended complaint (ECF No. 17), the defendants were not able to raise this issue in their original motions to dismiss. The plaintiffs address this issue in their reply to the defendants' opposition to the plaintiffs' motion for circulation. ECF No. 24. Even though I normally would not consider arguments raised for the first time in a reply brief, in the interest of expediency, I consider both arguments in this motion.

6

apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alternation and quotation omitted).

The amended complaint alleges WCC terminated Kiefaber on October 6, 2015, and he consented to join this suit on May 17, 2018. Therefore, if the alleged violation was not willful, his FLSA claims are barred. If the alleged violations were willful, he may sue for FLSA minimum wage violations that occurred from May 17, 2015 until was fired in October 2015.

It is not clear from the face of the amended complaint that Kiefaber's claims are time-barred. Whether WCC relied on the DOL report is a question of fact, and the plaintiffs have plausibly alleged that WCC, through its refueling policy, willfully violated the FLSA minimum wage provisions. I therefore deny the defendants' motion to dismiss Kiefaber's FLSA claims on the basis of the statute of limitations.

*4. Bar to FLSA claim under 29 U.S.C. § 259*

WCC, Martin, Moran, Moore, and Sarver assert that in 2013 the DOL reviewed WCC's compensation policy and determined that WCC did not owe back wages for minimum wage violations. Thus, they argue, the plaintiffs' FLSA claims are barred by the safe harbor provision in 29 U.S.C. § 259. ECF Nos. 9 at 6, 10 at 6. The defendants provide excerpts from a 2013 DOL Compliance Action Report (the DOL report). They contend the DOL report indicates that the DOL was aware of WCC's policy requiring drivers to pay for gas using their tips but still "allow[ed] the use of IRS reporting percent tip wages as a tip credit toward [minimum wage] thus eliminating [back wages] computed." ECF No. 9-1 at 9. The defendants provide no additional detail for this reasoning, but it appears that they are arguing that the DOL report absolved WCC of any liability for back wages, WCC relied in good faith on the DOL's apparent blessing of WCC's practices, and that the plaintiffs' FLSA claims are therefore barred.

The plaintiffs only indirectly respond to this portion of the motion. They argue that, despite the DOL report, the FLSA tip credit is not available to WCC because "Reno could not and did not retain 100% of the tips he received while employed by the defendant . . . ." ECF No. 20 at 3.

Section 259 does not provide an automatic bar against claims at the pleading stage of a case. Under § 259, an FLSA claim is barred if the defendant "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation order, ruling, approval, or interpretation" of the "the Administrator of the Wage and Hour Division of the Department of Labor." The defendants have not yet proven good faith, although this may be a viable defense later in the case. Nor have they established that the DOL report—of which they provide only short excerpts—will support a good faith defense under § 259. They provide no support for the conclusion that the DOL report qualifies as an "administrative regulation, order, ruling, approval, or interpretation" under § 259(a) or that Richard Quezada, the Assistant District Director of the DOL Wage and Hour Division and author of the report, qualifies as "the Administrator of the Wage and Hour Division of the Department of Labor" under § 259(b)(1).

Even if the DOL report established that the plaintiffs could not base their FLSA claim on an invalid tip credit, it does not address the plaintiffs' claims that for some weeks, the amount they spent on gas was so high that the base hourly wage plus remaining tips did not reach the amount mandated by § 206. ECF No. 17 at 11. I thus deny the defendants' motion to dismiss the FLSA claims based on a bar under § 259.

////

////

*5. Release of Minimum Wage Rights*

WCC, Martin, Moran, Moore, and Sarver argue that Reno's FLSA claims should be dismissed because Reno has acknowledged that WCC no longer owes him any back pay for minimum wage. ECF Nos. 9 at 8-9, 10 at 8-9. The defendants provide a signed release in which Reno states that he has

> received $ 473.28 (Gross Amount), which is the accurate amount of back pay for minimum wage owed to me by Western Cab Company from September 23, 2012 to the present. I acknowledge that Western Cab Company does not owe me any further amount of back pay for minimum wage and that I do not wish to be included in any class action for the recovery of back pay for minimum wage.

ECF No. 9:5. Reno's signature is dated June 15, 2017, and WCC claims that this settlement was negotiated with Reno's labor union. ECF No. 10 at 10.

The plaintiffs respond that the minimum wage release is *void ab initio* because it was obtained without judicial approval while Reno was not represented by legal counsel. ECF No. 20 at 7. They rely on *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1945). The defendants reply that Reno was represented by his union during negotiations, referencing an email between a WCC lawyer and a union representative that discusses the agreement. ECF No. 9-4. They argue that *O'Neil* and *Gangi* are inapposite because those cases involved agreements in which the employees were not paid, while Reno was actually paid his outstanding back wages. ECF No. 22 at 5-6.

The release form is not alleged in or attached to the amended complaint. Nor have the plaintiffs acknowledged that it is authentic or that it is integral to their claims. Thus, I cannot consider it when ruling on the motions to dismiss. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1988); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Dent*, 502 F.3d at 1143 (the district court properly considered a similar release when "[t]he parties agree that [it is]

9

authentic and acknowledge that [it is] integral to [the plaintiff's] claim").[5]  I therefore deny the portion of the defendants' motions to dismiss that is based on Reno's minimum wage release.

*6. Lack of Specificity*

WCC, Martin, Moran, Moore, and Sarver argue that the plaintiffs' FLSA claims should be dismissed under Federal Rule of Civil Procedure 8(a)(2) because the plaintiffs failed to identify specific weeks in which the minimum-wage violations occurred. ECF Nos. 9 at 6, 10 at 6, 32 at 12-13 (citing *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014), as amended (Jan. 26, 2015)).  The plaintiffs respond that the defendants misstate the case law, and that the amended complaint includes sufficient facts by describing the circumstances and time periods that were most likely to result in FLSA violations. ECF No. 20 at 4-6.

To plausibly state a claim for relief, the pleading must offer more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  When claiming a FLSA violation, "detailed factual allegations . . . are not required to state a plausible claim," but the plaintiffs must plausibly allege that there "was a given week in which [they were] entitled to but denied minimum wages or overtime wages." *Landers*, 771 F.3d at 644-45.  The plausibility of a claim for minimum wages is "context specific," and I am mindful that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Id.*

---

[5] While I may consider the release if I treat the motions to dismiss as motions for summary judgment, I decline to do so because the release raises factual questions not yet suitable for determination.  And even if I considered the release at this time, the defendants have not shown that Kiefaber signed a release, and Reno did not release WCC from FLSA minimum wage violations that may have occurred between June 15, 2017 and his termination from WCC.  Thus, the release does not appear dispositive of all the FLSA claims.

10

In the present case, the plaintiffs have plausibly alleged minimum wage violations under the FLSA. *See Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) (plaintiff satisfied the pleading requirements by "identif[ying] tasks for which he was not paid and alleg[ing] that he regularly worked more than eight hours in a day and forty hours in a week . . . ."). They have not alleged a specific week or weeks in which they earned below the required weekly wage, but they have identified a set of common circumstances—"slow periods of business for the Las Vegas taxi industry"—that likely lead to wage violations, and they specifically allege that those violations occurred "during one or more weeks in the month of December during the three years preceding the filing of this complaint." ECF 17 at 4. I therefore deny the defendants' motion to dismiss the FLSA claims based on a lack of specificity.

*7. Union Involvement*

WCC individually moves to dismiss the FLSA claims against it because the union is a necessary party but has not been joined in the suit. WCC alleges the plaintiffs' labor union agreed with WCC's policy requiring drivers to return their vehicles with a full tank of fuel and the union is the plaintiffs' sole bargaining representative. ECF No. 10 at 11-12. The plaintiffs respond that the union's participation in the creation of the policy or its involvement in this case does not absolve the defendants of their obligations under the FLSA. They also argue that the labor union cannot modify or limit the plaintiffs' rights to pursue actions against the defendants absent a collective bargaining agreement with an explicit term doing so. ECF No. 20 at 11-12.

The FLSA provides individual employees with a "nonwaivable . . . right to a minimum wage . . ." that "cannot be abridged by contract or otherwise waived . . . ." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 741 (1981). "Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements,

11

cannot be utilized to deprive employees of their statutory rights." *Id.* (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944)). Consequentially, union approval of a policy does not automatically render that policy compliant with the FLSA. Nor does the fact that union approval may be required to change a policy absolve employers from liability for FLSA violations. While there are exceptions to this generally nonwaivable rule in relation to overtime pay and "preliminary or postliminary working activities," none of them has been raised. *Id.* at 741 n.19. I therefore deny the portion of WCC's motion to dismiss the FLSA claims arguing that WCC's policy has been approved by the plaintiffs' labor union.

    *8. Awad as Employer*

Awad argues that the plaintiff's amended complaint lacks sufficient facts to support his status as an employer under the FLSA because the plaintiffs use the same collective language in reference to all the defendants and because the details that are included in the allegation do not meet the "economic realities" test. ECF 32 at 8-11 (citing *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993)). The plaintiffs respond that while they collectively refer to the defendants when establishing Awad as an employer in the amended complaint, they do not merely rely on Awad's status within the company to support their claims. They specify that each of the defendants has "acted as an employer by willfully, intentionally, knowingly or otherwise creating the compensation policies alleged herein that violate the FLSA," and each defendant "continue[d], create[d], or allow[ed] such policies to flourish and remain in existence." ECF No. 17 at 2.

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Where an individual exercises control over the nature and structure of the employment relationship, or

economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (en banc) (quotations omitted). In determining whether an individual meets the definition of employer under the FLSA, I use the "economic reality" test, which considers four factors: "whether the alleged employer [1] has the power to hire and fire the employees, [2] supervises and controls employee work schedules or conditions of employment, [3] determines the rate and method of payment, and [4] maintains employment records." *Hale*, 993 F.2d at 1394. None of these factors is dispositive. *Id.*

The plaintiffs allege that Awad had and has control over the conditions of employment and the rate and method of payment for WCC taxi drivers. ECF No. 17 at 2. They provide specific details regarding the compensation policy at issue and directly allege that Awad is partially responsible for enacting and maintaining that policy. Id at 9-12. While these allegations are collectively made against the defendants, they go beyond mere "labels and conclusions, [or] a formulaic recitation of the elements of a cause of action. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Taking these allegations as true, they support the conditions of employment and method of payment considerations in the economic reality test. The plaintiffs do not explicitly allege that Awad had the authority to fire WCC employees or that he maintains employment records. However, the test does not require the plaintiff to allege all four factors. The amended complaint sufficiently establishes a plausible entitlement to relief against Awad. I therefore deny Awad's motion to dismiss the FLSA claims against him.

**c. Supplemental Jurisdiction over Nevada MWA and NRS Claims**

In addition to their FLSA claims, the plaintiffs sue the defendants for violations of the Minimum Wage Amendment (MWA) to the Constitution of the State of Nevada, Article 15,

Section 16. ECF No. 17 at 6-9. The plaintiffs also claim the defendants owe them an additional 30 days of wages under Nevada Revised Statutes (NRS) §§ 608.020-040 for failure to pay outstanding wages owed under the MWA when the plaintiffs ceased working. *Id.* at 12-13.

In their amended complaint, the plaintiffs assert that the court has supplemental jurisdiction over these state law claims. WCC and Awad move to dismiss the plaintiffs' MWA claims, arguing that I should decline to exercise jurisdiction if I dismiss the FLSA claims or if some plaintiffs have only MWA claims. ECF Nos. 10 at 6, 32 at 14. Awad also argues that exercising supplemental jurisdiction over the Nevada claims would be improper because the MWA claims are asserted against only WCC and it would be unfair to require the individual defendants to participate in a case with complex class action claims that are not asserted against them. Additionally, WCC asks me to dismiss the NRS claims because they are dependent on the viability of the MWA claims.[6] ECF No. 10 at 9.

The plaintiffs move for an order confirming supplemental jurisdiction over the individual and class action MWA claims, including pendant party jurisdiction for prospective plaintiffs who have no FLSA claims against the defendants. ECF No. 57. They argue that the MWA and FLSA claims involve common or identical issues of fact and law, that none of the circumstances enumerated in 28 U.S.C. § 1367(c) exists in the present case, and that it would be an abuse of my discretion to deny supplemental jurisdiction. *Id.* at 6-11. The defendants respond that the motion to confirm jurisdiction is premature because there is no pending motion to dismiss for lack of supplemental jurisdiction,[7] but that if I consider the issue, I should not exercise jurisdiction

---

[6] Because the survival of the NRS claims depends on the MWA claims, my analysis focuses only on the MWA claims.

[7] This argument is puzzling given that both WCC and Awad have moved to dismiss the MWA claims for lack of supplemental jurisdiction. ECF Nos. 10 at 6, 32 at 14.

14

because of the history of these claims in Nevada courts and the existence of valid arbitration agreements barring suit. ECF No. 62. The plaintiffs reply that deferring a ruling on supplemental jurisdiction would serve no purpose and the issue is ripe because there is a pending motion to add a new plaintiff who wishes to assert an MWA claim. ECF Nos. 63, 64.

I have supplemental jurisdiction over state-law "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Nevertheless, I may decline to exercise supplemental jurisdiction under if:

   (1) the claim raises a novel or complex issue of State law,

   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

   (3) the district court has dismissed all claims over which it has original jurisdiction, or

   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4). If I determine that one or more of these conditions exists, I must then consider whether exercising jurisdiction would ultimately serve "the principles of judicial economy, procedural convenience, fairness to litigants, and comity . . . ." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 343 (1988). If these considerations do not favor exercising supplemental jurisdiction, then "[I] should hesitate to exercise jurisdiction over [the] state claims . . . ." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 562 (2d Cir.1978) (holding that a district court abused its discretion when it refused to remand a state law claim which involved unsettled question of state statutory construction).

The plaintiffs' Nevada claims meet the "same case and controversy" requirement of § 1367(a). The FLSA and MWA claims both stem from WCC's policy of requiring its taxi drivers to return their vehicles with a full tank of fuel. And although the divergent legal considerations discussed below might lead to slightly different factual analyses, the FLSA and MWA claims also involve the same fundamental questions of fact: how many hours the plaintiffs worked and how much they were paid in a given period.

Although there are several potentially dispositive issues yet to resolve, including purported arbitration agreements and releases signed by the plaintiffs, I have not dismissed the federal FLSA claims, so § 1367(c)(3) does not apply. It is also not apparent at this stage that the MWA claims substantially predominate over the FLSA claims.

There are, however, various unresolved and complex issues of state law that are more appropriately resolved by the Nevada courts, such that considerations of comity weigh against exercising jurisdiction over the MWA claims. The controversy between WCC and its employees has a history in the Nevada courts that is germane to the jurisdictional analysis. In September 2014, Laksiri Perera, a WCC taxi driver, sued WCC for violations of the MWA. *See* ECF No. 57 at 17-21 (complaint in *Perera et al. v. Western Cab Company*, Case No. A-14-707425-C (Nev. 8th Jud. Dist. Ct.)). WCC moved to dismiss that complaint, which the district court denied. WCC then petitioned the Supreme Court of Nevada for a writ of mandamus or prohibition. That court considered four questions related to the MWA, one of which was "whether . . . fuel costs should be factored into calculating minimum wage compliance" under the MWA. *Western Cab Co. v. Eighth Judicial Dist. Ct.*, 390 P.3d 662, 666 (Nev. 2017). The Supreme Court of Nevada ruled on three of the questions, but it "declined to exercise [its] discretion regarding the fuel-calculation issue because that issue depends upon facts that must be developed in the district

16

court." *Id.* Upon remand, the district court denied class certification and injunctive relief to the plaintiffs, and the parties stipulated that the case be dismissed with prejudice. *Perera*, Case No. A-14-707425-C (February 14, 2018) (order denying class certification, injunctive relief, and appointment of a special master); *Id.* (April 24, 2018) (stipulation and order vacating hearing date and dismissal of action with prejudice).

The fuel-calculation issue is central to determining whether there were minimum wage violations under the MWA, as both parties stipulate that WCC employees were not paid the full minimum wage without considering tips. The Nevada courts have not resolved this particular issue under the MWA. Considerations of comity therefore weigh against a federal court deciding it. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 927 (9th Cir. 2001) (affirming a district court's decision to decline to exercise supplemental jurisdiction over a state claim because "it raised an issue of first impression as to how [the] provision is to be applied."). These considerations are particularly salient given that the MWA is part of the Nevada Constitution and the Supreme Court of Nevada did not rule even though it reviewed the question *en banc*. 390 P.3d 662.

No doubt other novel and complex issues of state law will arise as this case proceeds. As discussed below, there are already issues related to how the prior state court lawsuit affects tolling under the MWA and the particulars of giving a class action notice under the MWA. Similarly, the plaintiffs allege that "Nevada's Supreme Court has not had occasion to address the issue of waiver of MWA rights by an unrepresented an [sic] employee." ECF No. 20 at 8. These are matters that the Nevada courts should decide.

There are also "other compelling reasons for declining jurisdiction" under 28 U.S.C. § 1367(c)(4). The circumstances surrounding the DOL report, and the different procedural

17

considerations for the FLSA collective action and MWA class action, complicate joint adjudication of the federal and state claims. So including the MWA claims would not serve the interests of judicial economy or procedural convenience. The DOL report and WCC's alleged reliance on it may be a valid defense against the FLSA claims under 29 U.S.C. § 259. But the factual and legal questions stemming from § 259 do not exist for the MWA claims. The MWA claims are also not affected by the 2018 amendment to the FLSA, which prohibits an employer from keeping tips received by its employees. Furthermore, evaluations of the role played by the plaintiffs' labor union, the purported releases, and the purported arbitration agreements may be different for the state and federal claims.

The previous state court action may have tolled the limitation period on the MWA claims, allowing for some plaintiffs to sue for violations under state law as far back as December 2012. *See* ECF No. 57 (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (June 11, 2018)). Consequentially, the relevant time period covered by the MWA claims potentially exceeds the two- or three-year periods for the FLSA claims. This likely invokes different factual considerations and, as evidenced by the plaintiffs' most recent motion for leave to amend their complaint, means there likely will be plaintiffs who can assert only state law claims. *See* ECF No. 63.

The differences between the FLSA and MWA claims are made more complex by the class and collective natures of the plaintiffs' claims. Although the plaintiffs have not yet moved for class certification, they have moved for circulation of a combined FLSA/MWA notice of pendency. Although the plaintiffs offer suggestions as to how to efficiently join the notice-related procedures involved in both claims, the complexity of simultaneously adjudicating both class and collective claims in this case cannot be overlooked. ECF No. 57 at 11-14. "Opt-in"

FLSA claims and "opt-out" MWA claims are not necessarily incompatible with each other. *See Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760-61 (9th Cir. 2010). But combining these two procedures creates additional complications that further suggest I should decline supplemental jurisdiction.

Furthermore, exercising jurisdiction over the MWA claims would not, on balance, be fair to the defendants. The MWA claims are asserted only against WCC.[8] If jurisdiction is extended to the MWA claims, the individual defendants may have the adjudication of their claims delayed by aspects of class procedures related to the MWA claim. Finally, this case is relatively new, it has not moved beyond the pleadings, and no conclusions of law have been made. So declining jurisdiction would not result in a significant loss of the time and resources of the parties or the court. *Compare, Leisure Time Ent. v. Cal Vista*, 35 Fed. App'x 565, 569 (9th Cir. 2002); *Ford Motor Co. v. GMB Universal Joints (West), Inc.*, 855 F.2d 861 (9th Cir. 1988) (unpublished).

In sum, the state law claims involve novel and complex legal questions under the Constitution of the State of Nevada that are better resolved by Nevada courts; they add procedural complexity, divergent legal considerations, and a potentially large contingent of plaintiffs with only state law claims; they are asserted only against WCC, not against the five individually-named defendants; and I am evaluating these factors at an early stage in this case. Exercising supplemental jurisdiction over the state law claims would not be economic, convenient, or fair to the parties and would not serve the interests of comity. I therefore decline to exercise supplemental jurisdiction over the state law claims.

---

[8] In their motion to dismiss, Martin, Moran, Moore, and Sarver ask me to dismiss all state law claims made against them, arguing that individual managers are not employers under Nevada employment compensation law. ECF No. 9 at 6. In the amended complaint, the plaintiffs clarify that the state law claims are asserted against only WCC. ECF No. 17 at 12-13.

## II. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motions to dismiss **(ECF Nos. 9, 10, 32) are GRANTED in part**. I dismiss the plaintiffs' FLSA claims that are based on alleged violations of 29 U.S.C. § 203(m)(2)(B). The remainder of the motions to dismiss are denied.

IT IS FURTHER ORDERED that the plaintiffs' motion for an order confirming supplemental jurisdiction over all state law claims **(ECF No. 57) is DENIED**. I decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. I therefore dismiss those state law claims without prejudice to them being pursued in state court.

DATED this 14th day of January, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE