UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL RENO, ERIC KIEFABER, DENNIS RHOADES, JASON HARRIS, PREMIER TAMAYO, WILFREDO ALLANIGUE, and ARIES BIHASA,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN CAB COMPANY, HELEN TOBMAN MARTIN, MARILYN TOBMAN MORAN, JANIE TOBMAN MOORE, MARTHA SARVER, and JASON AWAD,<br><br>Defendants. | Case No.: 2:18-cv-00840-APG-NJK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CIRCULATION OF NOTICE AND DENYING PLAINTIFFS' MOTION TO SUPPLEMENT**<br><br>[ECF Nos. 11, 57] |

Plaintiffs Michael Reno, Eric Kiefaber, Dennis Rhoades, Jason Harris, Premier Tamayo, Wilfredo Allanigue, and Aries Bihasa were taxi drivers employed by Western Cab Company (WCC). They have sued defendants WCC, Helen Tobman Martin, Marilyn Tobman Moran, Janie Tobman Moore, Martha Sarver, and Jason Awad for failure to pay minimum wage in violation of the Fair Labor Standards Act (FLSA). The plaintiffs bring this action on behalf of themselves and as a putative FLSA collective action for other WCC taxi drivers.

The plaintiffs move for circulation of notice of the pendency of the FLSA collective action under 29 U.S.C. § 216(b). ECF No. 11. They ask that I allow them to circulate notice to all individuals who are or have been employed as taxi drivers by WCC from May 9, 2015 to the present day so that those individuals who potentially have FLSA minimum wage claims may "opt in" to the collective action. They provide proposed notice and consent forms and ask that I toll the statute of limitations since this case has been filed or since the motion has been pending.

The plaintiffs have plausibly alleged that the putative opt-in plaintiffs are similarly situated because they were subject to WCC's policy requiring taxi drivers to pay for fuel using their tips.  The plaintiffs' FLSA collective action claim meets the more lenient first-step requirements for preliminary certification, so I grant the motion for circulation of notice. However, the plaintiffs must submit revised proposals for notice and consent addressing the issues I identify in this order.

The plaintiffs also move to supplement their original motion to now ask for circulation of a parallel notice of a Federal Rule of Civil Procedure 23 class action under the Minimum Wage Amendment (MWA) to the Nevada Constitution. ECF No. 57.  In an earlier order, I declined to exercise supplemental jurisdiction over the Nevada MWA claims. ECF No. 67.  The plaintiffs' motion to supplement is thus moot.  The remainder of this order concerns the FLSA claim only.

**I. PRELIMINARY CERTIFICATION AND CIRCULATION OF NOTICE**

In the present motion, the plaintiffs ask for preliminary certification of a FLSA collective action so they can provide the putative opt-in plaintiffs notice of the pendency of the action. They argue that notice should be given to all individuals who were employed as WCC taxi drivers during the three years preceding the commencement of this lawsuit because all those drivers were subject to WCC's policy requiring them to pay for fuel using their tips, in violation of FLSA minimum wage laws. ECF No. 11 at 5-9.  The defendants respond that preliminarycertification and notice are inappropriate because the proposed recipients of the notice are not similarly situated to the named plaintiffs, Reno and Kiefaber.[1]  They argue that the plaintiffs are not current employees and did not sign settlement or arbitration agreements

---

[1] Rhoades, Harris, Tamayo, Allanigue, and Bihasa were not named plaintiffs when the defendants responded to Reno and Kiefabers' motion for circulation.

2

regarding the claims, whereas many of the putative plaintiffs are current employees and have signed settlement or arbitration agreements.[2] ECF No. 19 at 6-7.

Unlike a Rule 23 class action where class members are automatically bound by the judgement unless they "opt out" of the class, each plaintiff in a § 216(b) collective action must expressly "opt in" to the suit through written consent. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). To serve the "named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion . . . ,'" I have discretion to facilitate notice to the putative opt-in plaintiffs. *Id*. (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

When considering whether to approve notice, I must determine whether to grant preliminary certification of the FLSA collective action. Also referred to as "provisional" or "conditional" certification, preliminary certification is the first step in the "two-step" FLSA certification process recently endorsed by the Ninth Circuit. *See Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). Preliminary FLSA certification under § 216(b) is not class certification by the traditional understanding of the term, as it "does not 'produce a class with an independent legal status[ ] or join additional parties to the action." *Id.* at 1101 (quoting *Genesis Healthcare Corp. v Symczyk*, 596 U.S. 66, 75 (2013)). "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare*, 596 U.S. at 75). Later, generally "at or after the close of relevant discovery," the defendants can

---

[2] The defendants also argue that I should deny certification because the policy in question was approved by a 2013 report by the Department of Labor. ECF No. 19:1. I previously addressed this issue when ruling on the defendants' motions to dismiss, determining that 29 U.S.C. § 259 does not provide an automatic bar at the pleading stage. ECF No 67. I will not revisit this issue in the current order.

3

instigate the second step of the certification process by moving for "decertification." *Id.* at 1109. "If the motion for decertification is granted, the result is a negative adjudication of the party plaintiffs' right to proceed in a collective as that collective was defined in the complaint. The opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff[s] [are] left to proceed alone." *Id.*

In both certification steps, the key inquiry is whether the putative opt-in plaintiffs are "similarly situated" to the named plaintiffs. 29 U.S.C. § 216(b). "[W]hat similarly situated means [] is, in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some *material* aspect of their litigation." *Campbell*, 903 F.3d at 1114 (emphasis in original); *see also Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1139 n.6 (D. Nev. 1999) (finding that plaintiffs must plausibly allege "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." (citations omitted)). "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (emphasis in original). The burden on the plaintiffs in the first step is light, and is "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* at 1109. The court's "analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.*

Taking as true the allegations in the amended complaint, the named plaintiffs and putative plaintiffs were subject to a single WCC policy that allegedly violated the FLSA minimum wage requirements. ECF Nos. 17, 11. This nexus exists regardless of whether the plaintiffs are former or current WCC employees. While the defendants argue that the putative

plaintiffs are not similarly situated to the named plaintiffs because many of the former have signed arbitration agreements, an analysis of those agreements requires factual considerations and is thus more appropriate for the second step of the certification process. At that time the defendants can move for decertification of the collective action or the exclusion of specific plaintiffs. I therefore grant the plaintiffs' motion to preliminarily certify a collective class.

## II. FORM AND CONTENT OF NOTICE

In their motion for circulation, the plaintiffs provided a proposed notice and a proposed consent to join the action. ECF No. 11 at 22-26. The defendants do not address the form or content of either in their opposition to the motion. Nevertheless, some changes are needed.

*a. Putative Plaintiff Contact Information*

To identify the putative opt-in plaintiffs, the plaintiffs ask that I order the defendants to provide "the names, addresses, phone numbers and email addresses of all taxicab drivers employed by defendants from May 9, 2015 through the present day." ECF No 11 at 10. This is a reasonable request. I order the defendants to provide the plaintiffs' counsel with the last-known residential and email addresses of all taxicab drivers employed by WCC from May 9, 2015 through the present day. At this time, the plaintiffs have not demonstrated a need for phone numbers.

*b. Manner of Service*

The plaintiffs ask that I order the defendants to (1) post the notice and consent form at WCC's place of business, (2) email the notice and consent form to all current and former WCC taxicab drivers, and (3) publish the notice and consent form in the next three issues of WCC's employee newsletters, if any. Given that I have ordered the defendants to provide contact information for former and current WCC drivers, it is not necessary to put the burden of

providing notice fully on the defendants. I therefore will order the defendants to post the notice in a conspicuous place at WCC's place of business where current taxi drivers regularly congregate.

    *c. Length of Opt-in Period*

The plaintiffs ask that I grant at least 120 days for the opt-in period. Given the relatively small number of putative opt-in plaintiffs (plaintiffs estimate around 100 drivers), a 120-day period is too long. Courts in the Ninth Circuit generally approve opt-in periods of 60 to 90 days. *See e.g., Dualan*, 172 F. Supp. 3d at 1151; *Benedict v. Hewlett-Packard Company*, 2014 WL 587135, at *13 (collecting cases). I therefore grant a 90-day opt-in period.

    *d. Mention of Arbitration Agreements*

The plaintiffs ask that the notice "expressly advise the 'opt in' plaintiffs that [the arbitration] agreements do *not* bar their 'opt-in' joinder in this case." ECF No. 24 at 16 (emphasis in original). They argue that without such language, the putative plaintiffs are likely to believe they are barred from joining the action. I agree that including the suggested language is appropriate and fair to those putative class members who signed such agreements. However, because an arbitration agreement could ultimately be a bar, the added language must also explain that the agreements may bar their participation in the later stages of the collective action.

    *e. Length of Limitation Period*

The plaintiffs argue that 29 U.S.C. § 255(a) sets the limitation period at three years because the WCC policy at issue is a willful violation of the FLSA minimum wage requirements. The defendants respond that the appropriate limitation period is two years because WCC was acting in accordance with a Department of Labor (DOL) report that upheld WCC's policy, and therefore the alleged violation was not willful. ECF No. 19 at 7-8.

I previously ruled that whether WCC relied on the DOL report is a question of fact to be determined later, and that the plaintiffs have plausibly alleged that WCC willfully violated the FLSA.  To avoid dissuading putative plaintiffs from opting into the collective action, the notice should refer to both the two-year and three-year limitation periods.  The plaintiffs' proposed notice properly refers to both.

  *f.* *Designation of Named Representatives*

The proposed notice and consent forms identify Reno and Kiefaber as class representatives and Leon Greenberg and Dana Sniegocki as class counsel. ECF No 11 at 23, 24, 26.  It has been the typical procedure in this circuit for the named plaintiffs and their counsel to be formally designated as representatives in an FLSA collective action.  This approach reflects the process under Rule 23 class actions, where "the district court must initially approve the creation of a class and the appointment of an adequate representative" and the "class members' interests are litigated by the named plaintiff." *Campbell*, 903 F.3d at 1105.  The Ninth Circuit recently emphasized, however, that "[a] collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree." *Id.* (emphasis in original).  Thus, there are no class representatives in FLSA collective actions, and putative plaintiffs can opt in and retain different counsel or represent themselves.  The plaintiffs must therefore revise the proposed notice and consent forms to comply with the Ninth Circuits' ruling in *Campbell*.

/ / / /

/ / / /

## III. EQUITABLE TOLLING

The plaintiffs ask that I equitably toll the limitation period for the time during which either this action has been pending (since May 9, 2018) or the motion for circulation has been pending (July 11, 2018). They argue that doing so "would deny the defendants any benefit from unsuccessfully opposing and delaying the plaintiffs' motion to circulate a notice of pendency." ECF No. 11 at 11. The defendants respond that "nothing has prevented any driver from filing an individual lawsuit," and that I should not toll claims for any of the putative plaintiffs. ECF No. 19 at 8.

An equitable tolling provision "is read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control make it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citations omitted). "[T]he time for a court to rule on a motion . . . for certification of a collective action in an FLSA case [ ] may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Dualan*, 172 F. Supp. 3d at 1154 (*quoting Small v. Univ. Med. Center of So. Nev.*, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013) (citations omitted)).

Like in *Dualan* and *Small*, the putative plaintiffs could be unfairly prejudiced by the delay in resolving an otherwise ripe motion for preliminary certification. I will toll the limitation period starting 30 days after the motion for notice was filed (August 11, 2018). The end date will be determined after the plaintiffs submit revised proposals of notice and consent.

////

////

## IV. CONCLUSION

IT IS THEREFORE ORDERED that plaintiffs Michael Reno and Eric Kiefaber's motion for circulation of notice **(ECF No. 11) is GRANTED in part** consistent with this order.  The plaintiffs' motion to supplement **(ECF No. 57) is DENIED** as moot.

IT IS FURTHER ORDERED that:

- The defendants must provide plaintiffs' counsel with the last-known residential and email addresses of all taxicab drivers employed by WCC from May 9, 2015 through the present day, within 30 days of this order.

- The plaintiffs must file revised proposals of notice and consent within 21 days of entry of this order.  As detailed above, the revised notices must reflect a 90-day opt-in period, express advice that any arbitration agreements that the putative plaintiffs may have signed may or may not bar their participation in the collective action, and the Ninth Circuit's recent ruling on class representatives and class counsel in *Campbell* (903 F.3d 1090).

- The defendants must respond to the plaintiffs' revised proposals of notice and consent within 15 days after the proposals are served on the defendants.

- After I approve the forms of notice and consent up, the defendants must post the forms in a conspicuous place at WCC's place of business where current taxi drivers regularly congregate.  Those forms must remain posted until the opt-in period has closed.

- The putative opt-in plaintiffs shall have 90 days from the date of posting of the notice and consent forms to submit their opt-in forms.

////

9

- The limitation period for the plaintiffs' FLSA claims is tolled from August 11, 2018 until a date that I will determine after the plaintiffs submit revised proposals of notice and consent.

DATED this 17th day of January, 2019.

                                      ANDREW P. GORDON
                                      UNITED STATES DISTRICT JUDGE