UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL RENO, et al., | Case No.: 2:18-cv-00840-APG-NJK |
| Plaintiffs | **Order Granting Motion to Compel Arbitration and Granting Unopposed Motions for Leave to File Supplemental Authority** |
| v. | |
| WESTERN CAB COMPANY, et al., | [ECF Nos. 152, 195, 210] |
| Defendants | |

This is a collective action under the Fair Labor Standards Act (FLSA). The plaintiffs are current or former cab drivers for defendant Western Cab Company (Western). They allege that Western failed to pay them the minimum wage because it required its cab drivers to pay for gas using their tips. Western moves to compel arbitration for 54 of the 161 plaintiffs based on arbitration agreements they signed. The plaintiffs contend the arbitration agreements are unenforceable. I grant the motion to compel arbitration for the plaintiffs who signed the agreements.

**A. Nevada Law Applies**

The arbitration agreements contain a choice of law provision stating that they are "governed by and under the Federal Arbitration Act." *See* ECF No. 152-1 at 26. The plaintiffs contend the Federal Arbitration Act (FAA) does not apply because they are transportation workers in interstate commerce and thus fall within the FAA's exclusion from coverage contained in 9 U.S.C. § 1. The defendants respond that the plaintiffs erroneously rely on a Supreme Court case that applies only to independent contractors, not employees like the plaintiffs.

/ / / /

"The FAA generally provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rittmann v. Amazon.com, Inc.*, --- F.3d ----, No. 19-35381, 2020 WL 4814142, at *3 (9th Cir. Aug. 19, 2020) (quoting 9 U.S.C. § 2). However, the FAA "exempts certain contracts from its scope, specifically the employment contracts of 'seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce.'" *Id.* (quoting 9 U.S.C. § 1). Section 1's residual clause referring to "any other class of workers engaged in foreign or interstate commerce" covers "'only contracts of employment of transportation workers,'" meaning "workers who, as a class, are 'engaged in foreign or interstate commerce.'" *In re Grice*, --- F.3d ----, No. 20-70780, 2020 WL 5268941, at *2 (9th Cir. Sept. 4, 2020) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001)). Whether § 1's exclusion applies is a question I must resolve before ordering arbitration. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019).

The plaintiffs contend they are transportation workers under the residual clause and thus are excluded from the FAA's scope because they regularly transport interstate travelers to and from the airport. The defendants do not dispute that the plaintiffs are transportation workers engaged in foreign or interstate commerce. Instead, they argue that *New Prime* held that § 1 applies only to independent contractors, not employees like the plaintiffs.

The defendants are incorrect. In *New Prime*, the Supreme Court framed the question at issue as whether "the term 'contracts of employment' [in § 1] refer only to contracts between employers and employees, or does it also reach contracts with independent contractors?" 139 S. Ct. at 536. The Supreme Court in *New Prime* viewed it as a given that § 1 applied to employees and it was deciding whether that section also applied to independent contractors. *See Bostock v.*

*Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1750 (2020) (stating that "in *New Prime*, we held that, while the term 'contracts of employment' today might seem to encompass only contracts with employees, at the time of the statute's adoption the phrase was ordinarily understood to cover contracts with independent contractors as well"). That is consistent with prior Supreme Court authority that § 1 exempts transportation employees engaged in interstate commerce from the FAA's scope. *New Prime*, 139 S. Ct. at 538 (quoting *Circuit City Stores, Inc.*, 532 U.S. at 119 ("Section 1 exempts from the FAA . . . contracts of employment of transportation workers.")).

The defendants' only argument to counter the plaintiffs' contention that the FAA does not apply is therefore incorrect. Section 1 applies to employees as well as independent contractors who are transportation workers. Because the defendants do not dispute that the plaintiffs qualify as transportation workers within § 1's meaning, I will address the parties' remaining arguments as if the FAA does not apply.[1]

That leaves the question of what law applies to the arbitration agreements. Given that the arbitration agreements were signed by employees in Nevada for work to be performed in Nevada for a Nevada company, Nevada law applies.[2] *See Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014) (en banc) ("Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of-law questions involving contracts . . . .");

---

[1] Given recent authority from the Ninth Circuit, it is doubtful that the plaintiffs are transportation workers within § 1's meaning. *See In re Grice*, 2020 WL 5268941, at *1-5. Because this decision was only recently issued, the parties have not had the opportunity to address it. Moreover, the defendants have not disputed that the plaintiffs are transportation workers within § 1's meaning other than their erroneous interpretation of *New Prime*. I therefore do not address these issues. Nor do I need to because the ultimate result of compelling arbitration is the same under Nevada law as it would be under the FAA.

[2] This case does not present the problem in *Rittmann* that rendered the arbitration agreement in that case unenforceable under any law. 2020 WL 4814142, at *11-12.

3

Restatement (Second) of Conflict of Laws § 188 (1971) (setting forth the most significant relationship test and contacts to be examined to include the place of contracting, negotiation, performance, subject matter of the contract, and residence of the parties).

### B. The Arbitration Agreements are Not Illusory[3]

The plaintiffs argue that the arbitration agreements are illusory under Nevada law because they give Western the unfettered right to amend or terminate the agreements, so Western can unilaterally decide whether any particular claim is litigated or arbitrated. The defendants respond that the arbitration agreements do not allow Western to retroactively modify or terminate the agreements, so the promise to mutually arbitrate is not illusory.

Under Nevada law, a contract "must be supported by consideration in order to be enforceable." *Jones v. SunTrust Mortg., Inc.*, 274 P.3d 762, 764 (Nev. 2012) (en banc). "Consideration is the exchange of a promise or performance, bargained for by the parties." *Id.* If a promise is illusory because one side is not obligated to perform, then the contract is unenforceable because there is no mutuality of obligation. *Sala & Ruthe Realty, Inc. v. Campbell*, 515 P.2d 394, 396 (Nev. 1973) (stating a promise is illusory if there is no obligation to perform and "[m]utuality of obligation requires that unless both parties to a contract are bound, neither is bound").

---

[3] The parties do not address whether this question is one for the court or the arbitrator. Because the plaintiffs are challenging whether they ever entered into an enforceable agreement to arbitrate, and because the arbitration agreements do not contain a clause delegating threshold validity or enforceability questions to the arbitrator, I address this issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). For the same reasons, I address the plaintiffs' arguments that Nevada public policy bars enforcement of class action waivers and that the arbitration agreements are unenforceable because the defendants required employees to sign them after this case was initiated.

Although the Supreme Court of Nevada has not addressed this issue, other courts have held that if one party to an arbitration agreement has the unilateral right to modify or terminate the agreement, then there is no mutuality because the party with the right to modify or terminate can always decide whether to litigate or arbitrate merely by changing or terminating the agreement. As a result, that party's promise to arbitrate is illusory. *See In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012) ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract." (gathering cases)).

The agreement at issue in this case provides that Western and its employee agree to arbitrate "covered claims." ECF No. 152-1 at 22. As relevant here, covered claims are defined as "any statutory or common law legal claims, asserted or unasserted, alleging the underpayment . . . of wages, . . . gas or fuel expenses, . . . or any element of compensation, based on claims of eligibility for minimum wage . . . under local, state or federal statutory or common law." *Id.* The agreement further provides that Western "may change or terminate this Agreement. Any change or termination will not apply to a pending claim." *Id.* at 25.

Western's promise to arbitrate is not illusory because it agreed to arbitrate covered claims, which includes both asserted and unasserted claims, and any change or termination will not affect a pending claim. Consequently, by the arbitration agreements' own terms, Western cannot retroactively modify or terminate its promise to arbitrate an accrued claim, even if it is not yet asserted by the employee. Moreover, Nevada implies the covenant of good faith and fair dealing into every contract. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d

1251, 1256 (Nev. 1998). Western thus must exercise its right to modify or terminate the arbitration agreement in good faith and not in a manner that would defeat its employees' reasonable expectation that the parties are mutually bound to arbitrate. *See Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-01832-JCM-NJK, 2014 WL 1577295, at *2 (D. Nev. Apr. 17, 2014) (concluding that due to the implied good faith covenant, a "provision that allows employers to unilaterally modify contractual terms, without an actual demonstration of bad faith, does not render a contract illusory"). The arbitration agreements are not unenforceable as illusory.

### C. Nevada's Public Policy Does Not Preclude Class or Collective Action Waivers

The plaintiffs contend that waivers of class action rights for consumer claims violate Nevada public policy. They argue that the same public policy considerations apply to their minimum wage claims, so the class and collective action waiver in the arbitration agreements is unenforceable as against Nevada public policy. And they contend that because Nevada law applies to their arbitration agreements, not the FAA, it does not matter that the Supreme Court of Nevada later followed United States Supreme Court authority in holding that class action waivers are allowed in arbitration agreements governed by the FAA regardless of a state's public policy. The defendants respond that the Supreme Court of Nevada now holds that class or collective action waivers in arbitration agreements are enforceable.

In *Picardi v. Eighth Judicial District Court of State, ex rel. County of Clark*, the Supreme Court of Nevada held that "a clause in a contract that prohibits a consumer from pursuing claims through a class action, whether in court or through arbitration, violates Nevada public policy." 251 P.3d 723, 724 (Nev. 2011) (en banc). Such a clause is unenforceable because "Nevada public policy favors allowing consumer class action proceedings when the class members present

common legal or factual questions but their individual claims may be too small to be economically litigated on an individual basis." *Id.*

After *Picardi*, the United States Supreme Court held that the FAA preempts state law that would make an arbitration agreement's class action waiver unenforceable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011). Consequently, under the FAA, class or collective action waivers in arbitration agreements are enforceable even if state law would find those provisions unconscionable or against state public policy. The Supreme Court of Nevada later ruled that *Concepcion* abrogated *Picardi*. *Tallman v. Eighth Judicial Dist. Ct.*, 359 P.3d 113, 120 (Nev. 2015) (en banc).

*Tallman*, like this case, involved minimum wage claims and an arbitration agreement that waived all rights to participate in class or collective proceedings. *Id.* at 116. However, the arbitration agreement in *Tallman* was governed by the FAA. *Id.* at 122. Thus, the *Tallman* court had no choice but to follow *Concepcion* and hold that its own previously expressed public policy in *Picardi* could not render the arbitration agreement unenforceable. *Id.* ("*Concepcion* does not permit a state court to invalidate a class arbitration waiver in a transaction involving commerce on the basis that individual arbitration hampers effective vindication of an employee's state-law-based overtime and minimum wage claims."). *Tallman* therefore does not expressly govern here because, as discussed above, the FAA does not apply to the plaintiffs' arbitration contracts.[4]

However, the Supreme Court of Nevada stated the following in a footnote in *Tallman*: "While a person's right to minimum wage is unwaivable, Nev. Const. art. 15, § 16, he may validly enter into an arbitration agreement that sets 'not only the situs of suit but also the

---

[4] If the FAA governs, then *Concepcion* and *Tallman* would compel arbitration despite the class or collective action waiver.

7

procedure to be used in resolving'" it. *Id.* at 122 n.3 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)); *see also id.* at 122 (stating that "the importance of a right does not entitle a litigant to arbitrate on a class basis when he has agreed to arbitrate his statutory claims on an individual basis"). Although not express, it appears the Supreme Court of Nevada signaled that it would not hold that an arbitration agreement that precludes class or collective actions for the recovery of minimum wages would be against Nevada public policy. Rather, it appears that the court is more inclined to uphold Nevada's public policy of "encourag[ing] arbitration and liberally constru[ing] arbitration clauses in favor of granting arbitration." *Id.* at 119 (quotation omitted). I therefore predict[5] that if confronted with the issue, the Supreme Court of Nevada would hold that even where the FAA does not apply, a class or collective action waiver in an arbitration agreement does not render it unenforceable under Nevada law as against public policy in a minimum wage dispute.

Even if I am wrong about that, the plaintiffs who signed the agreements nevertheless must arbitrate because the arbitration agreements provide that unenforceable provisions must be severed without affecting the remainder of the agreement. *See* ECF No. 152-1 at 26. To the extent the class or collective action waiver provision is unenforceable under Nevada law, that provision is severed, but the requirement to proceed to arbitration remains unaffected.

/ / / /

/ / / /

---

[5] Where Nevada's highest court has not decided an issue, I must predict how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted).

8

**D.  The Agreements Are Not Unenforceable Due to Their Timing or Mandatory Nature**

The plaintiffs argue the agreements should be unenforceable because they were imposed on employees as a mandatory condition of future employment.  They also argue Western presented the employees with the agreements after this suit was filed, thereby interfering with the court's control over communications with putative collective action members.  Western responds that it can require employees to execute arbitration agreements as a condition of employment and nothing about the timing or its conduct renders the agreements unenforceable.

As a general matter, both parties are permitted to engage in pre-certification communications with potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) (discussing the issue in the context of class actions).  Consequently, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101.  "Courts have, on occasion, limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made." *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *5 (N.D. Cal. Nov. 10, 2017) (quotation omitted).

There is no evidence Western engaged in any misleading, coercive, or otherwise improper communications with putative class members. *See Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 144 (4th Cir. 2018) (holding arbitration agreement unenforceable because the employer engaged in coercive tactics and gave false information to its employees); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014) (affirming the district court's refusal to compel arbitration where the employer's means of obtaining its employees'

9

signatures "was confusing, misleading, coercive, and clearly designed to thwart unfairly the right of its store managers to make an informed choice as to whether to participate in this FLSA collective action"). Requiring employees to sign an arbitration agreement as a condition of employment does not, standing alone, render the agreement unenforceable. *See Kindred v. Second Judicial Dist. Court ex rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000).

### E. Dismiss or Stay

"Although the Federal Arbitration Act provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (quotation omitted). The defendants moved to dismiss the claims of the plaintiffs who signed the arbitration agreements. The plaintiffs did not request a stay. I therefore dismiss the claims of the 54 plaintiffs who must arbitrate their claims.

### F. Conclusion

I THEREFORE ORDER that the plaintiffs' motions for leave to file supplemental authority **(ECF Nos. 195, 210) are GRANTED**.

I FURTHER ORDER that the defendants' motion to compel arbitration **(ECF No. 152) is GRANTED**. The following plaintiffs' claims are dismissed without prejudice to pursue their claims in arbitration:

| | | | |
|---|---|---|---|
| Tilahun Alemu | Bert Archer | Oscar Areizaga | Francis Arena |
| Robert Arrandt | Teshome Balcha | Bejiga Belachew | Aries Bihasa |
| Joseph Biscardi | William Brown | Michael Clemente | Oscar Cutino |
| Jeremy Davis | Dimitri Dimitrov | Joel Estella | Abayineh Gizaw |
| Marco Gonzalez | Daniel Gutierrez-Flores | | Tadesse Hadera |

| | | | |
|---|---|---|---|
| Roger Hagopian | Yohanes Haileab | Julius Hanak | Herman Harper |
| Tony Johnson | Byong Wan Jun | Vladimir Kassabov | Embaye Kelati |
| John Kelley | Jack Lavivong | Jun Macato | John Marble |
| Cvyatko Marinov | Hululyafl Mengestu | Andre Moon | Carlton Murray |
| Kanchalee Netrayana | Osman Omer | Enrique Ostojic | Joseph Park |
| Reginald Peterson | Elmer Ragunton | Dennis Rhoades | Josephine Simpkins |
| John St. John | Amarjeet Summan | Zewdu Tadesse | Stafhanie Ty |
| David Ward | Sayed Wardak | Dawit Weldmariam | Donovan White |
| Behailu Yeshanew | Adam Zhang | Kiros Aberra | |

DATED this 18th day of September, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

11